```
1  COOLEY LLP
   ROBERT L. EISENBACH III (124896)
2  (reisenbach@cooley.com)
   3 Embarcadero Center, 20th Floor
3  San Francisco, CA 94111-4004
   Telephone:    (415) 693-2000
4  Facsimile:    (415) 693-2222
5  Attorneys for Plaintiffs
```

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

[MODESTO DIVISION]

| | |
|---|---|
| In re:<br>**NATHAN BENJAMIN DAMIGO,**<br>Debtor.<br>Chapter Number: 7 | Case No. 19-90003-E-7<br>**AMENDED COMPLAINT SEEKING DETERMINATION THAT DEBTS ARE NON-DISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(A)(6) AND NOT DISCHARGED PURSUANT TO 11 U.S.C. § 727(B)** |
| **ELIZABETH SINES, SETH WISPELWEY, SORONYA HUDSON, APRIL MUNIZ, MARCUS MARTIN, NATALIE ROMERO, DEVIN WILLIS, CHELSEA ALVARADO, AND THOMAS BAKER,**<br>Plaintiffs,<br>v.<br>**NATHAN BENJAMIN DAMIGO,**<br>Defendant. | Adv. Pro. No. 19-09006-E |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**AMENDED COMPLAINT**

**AMENDED COMPLAINT SEEKING DETERMINATION THAT DEBTS ARE NON-DISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(A)(6) AND NOT DISCHARGED PURSUANT TO 11 U.S.C. § 727(B)**

Elizabeth Sines, Seth Wispelwey, Soronya Hudson (as successor to Marissa Blair), April Muñiz, Marcus Martin, Natalie Romero, Devin Willis, Chelsea Alvarado, and Thomas Baker (the "**Plaintiffs**") file this *Amended Complaint Seeking Determination that Debts are Non-Dischargeable Pursuant to 11 U.S.C. § 523(a)(6) and Not Discharged Pursuant to 11 U.S.C. § 727(b)* (the "**Adversary Proceeding**") against defendant Nathan Benjamin Damigo ("**Defendant**" or "**Damigo**"), who filed a voluntary petition under Chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**") on January 2, 2019 (the "**Petition Date**"). The Plaintiffs, by and through their undersigned counsel, allege, upon knowledge and/or information and belief, the following:

I.     **NATURE OF THE ACTION**

1. By this Adversary Proceeding, Plaintiffs seek a determination that the amounts of the damages, costs, and expenses arising from the claims asserted in Plaintiffs' lawsuit against Damigo in the United States District Court for the Western District of Virginia (the "**Virginia District Court**"), *Sines v. Kessler*, Case No. 3:17-cv-00072-NKM (the "**Charlottesville Action**") are non-dischargeable pursuant to section 523(a)(6) and not discharged pursuant to section 727(b) of the Bankruptcy Code.

2. The operative facts of this action arise out of the August 11 and 12, 2017 "Unite the Right" rally in Charlottesville, Virginia, organized by several prominent neo-Nazi and white supremacist leaders and groups, including Damigo and his organization Identity Evropa.

3. Damigo is a white nationalist and founder of the white supremacist organization Identity Evropa. Damigo and his group were instrumental in the planning and execution of the events at Unite the Right. Damigo personally attended the rally on August 12, 2017, where he was slated to give a closing speech as a leader of the Alt-Right. Damigo was arrested for failing to follow police orders and to leave after the rally descended into violence and a state of emergency was declared.

4. At the time of Unite the Right, the Plaintiffs in this action were University of Virginia undergraduates, law students, persons of faith, ministers, parents, and businesspersons. Each Plaintiff was injured as a result of the conduct of Damigo and his co-defendants in the Charlottesville Action during the events of August 11 and 12, 2017. Five Plaintiffs were physically injured in a car attack

by Damigo's co-defendant James Alex Fields Jr. Those Plaintiffs and the other Plaintiffs suffered and continue to suffer deep and debilitating psychological and emotional injuries.

5. The Charlottesville Action was filed on October 11, 2017 against Damigo and other defendants to challenge their actions under the laws of the United States of America and the Commonwealth of Virginia.

6. On January 29, 2019, the Adversary Proceeding was initiated by the then-plaintiffs in the Charlottesville Action: Elizabeth Sines, Seth Wispelwey, Marissa Blair, April Muñiz, Hannah Pearce, Marcus Martin, Natalie Romero, Devin Willis (as John Doe), Chelsea Alvarado, and Tyler Magill.

7. Mr. Magill voluntarily dismissed his claims in the Charlottesville Action on April 16, 2019.

8. Ms. Pearce voluntarily dismissed her claims in the Charlottesville Action on January 22, 2020.

9. Mr. Willis was initially identified as John Doe in the Charlottesville Action. Mr. Willis's identity was disclosed prior to trial, Mr. Willis testified at trial, and the Court entered judgment in the Charlottesville Action on behalf of Mr. Willis and the other Plaintiffs.

10. On September 17, 2019, the Second Amended Complaint was filed in the Charlottesville Action adding Thomas Baker as a plaintiff. Mr. Baker suffered severe injuries when Damigo's co-defendant in the Charlottesville Action, James Alex Fields Jr., drove his car into a crowd of people on the afternoon of August 12, 2017. *See* Motion for Leave to File a Second Amended Complaint to Add Plaintiff Thomas Baker, W.D.Va. No. 3:17-cv-00072-NKM, ECF No. 524 at 6-8. As a result of Mr. Baker's debilitating injuries and emotional trauma, he was not prepared to join a lawsuit when the complaint initiating the Charlottesville Action was initially filed on October 11, 2017. *Id.* at 9. Damigo neither listed nor scheduled Mr. Baker in his bankruptcy schedules, and Mr. Baker did not have actual knowledge or notice of Damigo's bankruptcy to timely file a request for a determination of the dischargeability of his claims pursuant to section 523(a)(6).

11. Ms. Blair unexpectedly passed away on September 19, 2024. The Virginia District Court appointed Ms. Blair's mother, Soronya Hudson, as Ms. Blair's successor in the Charlottesville

1  Action on January 27, 2025. *See* Order Granting Substitution of Party, W.D.Va. No. 3:17-cv-00072-
2  NKM, ECF No. 1698.

3　　　　12.　Mr. Willis, Mr. Baker, and Ms. Hudson's claims in this action arise from the same
4  conduct, transaction, or occurrence as those of the other Plaintiffs.

5　　　　13.　On October 18, 2024, a final judgment was entered in the Charlottesville Action finding
6  Damigo:

7　　　　　　i.　Jointly and severally liable for nominal and/or compensatory damages of $1,303,284
8　　　　　　　　to Ms. Romero, Ms. Muñiz, Mr. Baker, Ms. Blair, Mr. Martin, Ms. Alvarado, and
9　　　　　　　　Mr. Willis;

10　　　　　　ii.　Liable for punitive damages of $58,333.33 to Ms. Romero, Ms. Muñiz, Mr. Baker,
11　　　　　　　　Ms. Blair, Mr. Martin, Ms. Alvarado, Mr. Willis, and Ms. Sines;

12　　　　　　iii.　Jointly and severally liable for costs incurred for a total of $468,216.15 to all
13　　　　　　　　Plaintiffs; and

14　　　　　　iv.　Jointly and severally liable for reimbursable expenses of $1,266,420.84 to all
15　　　　　　　　Plaintiffs.

16　　　　14.　The Virginia District Court's final judgment against Damigo in the Charlottesville
17  Action awarded Plaintiffs nominal, compensatory, and punitive damages, and costs because of the
18  willful and malicious injuries Damigo caused Plaintiffs. That judgment is non-dischargeable under
19  section 523(a)(6) of the Bankruptcy Code.

20　　　　15.　The reimbursable expenses awarded in the final judgment were all incurred and arose
21  after the Petition Date and, therefore, are neither subject to Damigo's bankruptcy discharge nor
22  discharged under section 727(b) of the Bankruptcy Code.

23　**II.　JURISDICTION AND VENUE**

24　　　　16.　This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157(b) and
25  1334(b). This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(6) and a core proceeding
26  pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (O).

27　　　　17.　Venue is proper within this district pursuant to 28 U.S.C. §§ 1408 and 1409.

28　　　　18.　Pursuant to Fed. R. Bankr. P. 7008, this Adversary Proceeding relates to the Chapter 7

bankruptcy case filed by the Defendant, on January 2, 2019, in the United States Bankruptcy Court for the Eastern District of California (the "**Bankruptcy Court**"), which is currently pending under Case No. 19−90003−E−7 (the "**Bankruptcy Case**").

19. To the extent consent is required, Plaintiffs consent to entry of final orders by the Bankruptcy Court in the Adversary Proceeding.

### III. PARTIES

20. Plaintiffs were injured by the conduct of Damigo and the other defendants in the Charlottesville Action on August 11 and 12, 2017 at the Unite the Right events in Charlottesville, Virginia. Additional facts regarding the Plaintiffs can be found in paragraphs 10 to 19 of the Plaintiffs' Second Amended Complaint (the "**Second Amended Complaint**") in the Charlottesville Action, which is attached hereto as **Exhibit A** and incorporated herein by reference.

21. Damigo is the individual debtor in the Bankruptcy Case and a defendant and judgment debtor in the Charlottesville Action. Damigo is a resident of the State of California.

### IV. FACTUAL BACKGROUND

22. Plaintiffs hereby incorporate by reference the allegations in the Second Amended Complaint.

23. Damigo is a white nationalist and the founder of a white supremacist organization, Identity Evropa, which is also named as a defendant in the Charlottesville Action. Identity Evropa adopted and popularized the white supremacist slogan, "You will not replace us," which was chanted at the Unite the Right events.

24. Damigo was arrested on April 15, 2017, for assaulting a woman at the "Battle for Berkeley" rally, which Damigo described as a test run for "rallies" like the one in Charlottesville.

25. At the invitation of Jason Kessler, his co-defendant in the Charlottesville Action, Damigo agreed to attend Unite the Right as a leader in the Alt-Right and to promote the event among the members of Identity Evropa.

26. Damigo took a lead role in organizing the Unite the Right events on August 11 and 12, 2017 directly and through Identity Evropa, including through his delegate and co-defendant Elliot Kline and other members of Identity Evropa. Damigo used online and media platforms to encourage

attendance at the Unite the Right rally, where violence was planned and anticipated by its leaders, including Damigo. Damigo approved battle gear for Identity Evropa members to wear at Unite the Right, including shields and helmets.

27. Damigo personally attended the rally on August 12, where he was arrested for failing to obey police orders and to leave after a state of emergency was declared.

28. After the events of August 11 and 12, Damigo ordered members of Identity Evropa to destroy evidence and not to speak to the police.

29. As a result of Damigo and his co-defendants' illegal acts, Plaintiffs suffered damages, including without limitation, serious physical injuries and harm, extreme emotional distress, and the inability to return to work or school, as set forth in more detail in paragraphs 283 to 294 of the Second Amended Complaint. *See* Ex. A ¶¶ 283–294.

30. To obtain redress for Damigo's unlawful actions, certain of the Plaintiffs filed their original complaint on October 11, 2017, against Damigo and other defendants, and an Amended Complaint on January 5, 2018. Plaintiffs filed the Second Amended Complaint on September 17, 2019. The Second Amended Complaint asserted claims against Damigo for, among other things, violations of 42 U.S.C. §§ 1985(3) and 1986, and civil conspiracy under Virginia law (the "***Virginia Conspiracy Statute***"). Plaintiffs also brought claims against certain of Damigo's co-defendants for violations of Virginia Code § 8.01-42.1 (Virginia's racial, religious, or ethnic harassment or violence statute), assault or battery, and intentional infliction of emotional distress. Ex. A ¶¶ 335-350, 365-372.

31. In Damigo's Schedule F filed in the Bankruptcy Case on January 2, 2019, Damigo listed certain plaintiffs in the Charlottesville Action as holding unliquidated and disputed claims in unknown amounts. *See* Bankruptcy Case, ECF. No. 1.

32. The parties in the Charlottesville Action engaged a third-party electronic discovery vendor to enable the collection and production of electronically stored information. The parties agreed that the third-party vendor would be engaged at the Plaintiffs' expense but that the Plaintiffs could seek to recover those expenses from Damigo and his co-defendants (the "***Reimbursable Expenses***") at a later date. The Reimbursable Expenses were first incurred beginning on March 1, 2019, with the

initial invoice due March 31, 2019.

33. A jury trial was held in the Charlottesville Action from October 25, 2021 through November 23, 2021, during which the parties admitted over 900 exhibits and presented testimony from 35 witnesses. Damigo testified at trial.

34. On November 23, 2021, the jury reached a verdict finding Damigo and his co-defendants violated the Virginia Conspiracy Statute by conspiring to commit unlawful acts, including at least one of the following: (1) subjecting persons to actions or intimidation or harassment, motivated by racial, religious, or ethnic animosity in violation of Virginia Code § 8.01-42.1; (2) directing violence at another person, motivated by racial, religious, or ethnic animosity in violation of Virginia Code § 8.01-42.1; (3) battery; (4) assault; and/or (5) false imprisonment. Certain other defendants were found liable for violating Virginia Code § 8.01-42.1, assault or battery, and intentional infliction of emotional distress. The jury awarded nominal, compensatory, and punitive damages.

35. Following the trial, Damigo moved for a directed verdict arguing that Plaintiffs failed to prove his participation in an unlawful conspiracy and that the punitive damages were constitutionally excessive. On December 30, 2022, the Virginia District Court issued a memorandum opinion, which is attached hereto as **Exhibit B** and incorporated herein by reference, denying Damigo's request for a directed verdict and finding that there was "more than substantial evidence to support the jury's verdict finding Damigo liable for Virginia state law civil conspiracy." Ex. B at 120. The Virginia District Court also held that the punitive damages award, which the Court held was subject to the Virginia statutory cap, was not constitutionally excessive. Ex. B at 185.

36. On October 18, 2024, following extensive post-trial briefing and appeals to the Fourth Circuit, the District Court issued an amended judgment in the Charlottesville Action (the "***Amended Judgment***"), which is attached hereto as **Exhibit C** and incorporated herein by reference.

37. The Amended Judgment is final and provides that Damigo is:

  i. Jointly and severally liable for nominal and/or compensatory damages of $1,303,284 to Ms. Romero, Ms. Muñiz, Mr. Baker, Ms. Blair, Mr. Martin, Ms. Alvarado, and Mr. Willis;

  ii. Liable for punitive damages of $58,333.33 to Ms. Romero, Ms. Muñiz, Mr. Baker,

Ms. Blair, Mr. Martin, Ms. Alvarado, Mr. Willis, and Ms. Sines;

  iii. Jointly and severally liable for costs incurred for a total of $468,216.15 to all Plaintiffs; and

  iv. Jointly and severally liable for Reimbursable Expenses of $1,266,420.84 to all Plaintiffs.

38. Pursuant to the Amended Judgment, Damigo was found personally liable in the total amount of $3,096,254.32.

## COUNT I

**11 U.S.C. § 523(a)(6) – Willful and Malicious Injury Caused by Damigo**
**(as arising under the Second Amended Complaint and Amended Judgment)**

39. Plaintiffs repeat and re-allege their allegations in the above paragraphs.

40. Based upon the facts and supporting evidence alleged herein, the amounts recoverable and/or the damages arising from the Second Amended Complaint and the Amended Judgment in the Charlottesville Action (the "*Claims*") against Damigo are non-dischargeable under section 523(a)(6) of the Bankruptcy Code as having created a debt or debts owed to Plaintiffs for willful and malicious injury inflicted by Damigo.

41. Damigo intentionally conspired to commit unlawful acts of intimidation, harassment, or violence motivated by racial, religious, or ethnic animosity, and to commit assault or battery at the Unite the Right rally.

42. As a result of Damigo's illegal conduct, Plaintiffs suffered damages as set forth in the Second Amended Complaint and reflected in the Amended Judgment.

43. Damigo intended for his actions to injure Plaintiffs by intentionally conspiring with one or more of his co-defendants in the Charlottesville Action to commit unlawful and tortious acts as alleged in the Second Amended Complaint.

44. Furthermore, the injuries inflicted on Plaintiffs were substantially certain to result from Damigo's illegal acts and the damages set forth in the Second Amended Complaint and represented in the Amended Judgment were the inevitable result of Damigo's actions.

45. Damigo's conduct was wrongful, without just cause, and excessive. Examples of the malicious nature of Damigo's activities include, but are not limited to: (i) agreeing to attend and

participate as a leader in the Unite the Right events, where violence was planned and encouraged, motivated by his racial, religious, and ethnic animus, and to further promote the event among the members of Identity Evropa; (ii) taking a lead role in organizing the Unite the Right events on August 11 and 12, 2017 directly and through his delegate Elliot Kline and other members of Identity Evropa; (iii) using online and media platforms to encourage attendance at the Unite the Right events, where violence was planned and encouraged; (iv) approving battle gear for Identity Evropa members to wear at Unite the Right, including shields and helmets; (v) attending and participating as a leader in the Unite the Right event on August 12, 2017, where he was arrested for failing to leave after a state of emergency was declared; and (vi) ordering members of Identity Evropa to destroy evidence of their misconduct and not to speak to the police after Unite the Right.

46. Based upon the foregoing, the Claims arise from Damigo's willful and malicious injury to Plaintiffs, and, as such, are non-dischargeable under Bankruptcy Code § 523(a)(6).

## COUNT II
**11 U.S.C. § 727(b) – The Reimbursable Expenses Were Not Discharged by Damigo's Discharge**
**(as arising under the Amended Judgment)**

47. Plaintiffs repeat and re-allege their allegations in the above paragraphs.

48. Damigo, along with his co-defendants, agreed that Plaintiffs would engage a third-party vendor to assist the Parties with discovery and document production for the Charlottesville Action, and that Plaintiffs could seek to recover the Reimbursable Expenses at a later date.

49. All Reimbursable Expenses were first incurred by Damigo after the Petition Date, beginning on March 1, 2019, with the initial invoice due March 31, 2019.

50. The Amended Judgment held Damigo jointly and severally liable for the Reimbursable Expenses.

51. Damigo has not paid any part of the Reimbursable Expenses to Plaintiffs.

52. Based upon the facts and supporting evidence alleged herein, the Reimbursable Expenses in the Amended Judgment in the Charlottesville Action against Damigo are neither subject to his discharge in the Bankruptcy Case nor discharged pursuant to Bankruptcy Code § 727(b).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court enter an Order and Judgment:

A. On Count I, finding that the amounts recoverable and/or the damages arising from the Second Amended Complaint and the Amended Judgment are non-dischargeable under Bankruptcy Code § 523(a)(6);

B. On Count II, finding that the Reimbursable Expenses in the Amended Judgment are neither subject to Damigo's discharge nor discharged under Bankruptcy Code § 727(b); and

C. Granting Plaintiffs such other and further relief as this Court may find just and proper.

Respectfully submitted,

Dated: April 3, 2025          COOLEY LLP

By: */s/ Robert L. Eisenbach III*
                Robert L. Eisenbach III

Attorneys for Plaintiffs