19

COOLEY LLP
ROBERT L. EISENBACH III (124896)
(reisenbach@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Plaintiffs*

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

[SACRAMENTO DIVISION]

| | |
|---|---|
| In re: | Case No. 19-90003-E-7 |
| **NATHAN BENJAMIN DAMIGO**, | |
| Debtor. | |
| Chapter Number: 7 | |
| **ELIZABETH SINES, SETH WISPELWEY, SORONYA HUDSON, APRIL MUÑIZ, MARCUS MARTIN, NATALIE ROMERO, DEVIN WILLIS, CHELSEA ALVARADO, AND THOMAS BAKER,** | Adv. Pro. No. 19-09006-E<br><br>DC No. RLE-1<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br>Date: June 26, 2025<br>Time: 10:30 a.m.<br>Dept.: E<br>Judge: Hon. Ronald H. Sargis |
| Plaintiffs, | |
| v. | |
| **NATHAN BENJAMIN DAMIGO,** | |
| Defendant. | |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

Page

SUPPLEMENTAL TABLE OF ABBREVIATIONS ................................................................. 6

PRELIMINARY STATEMENT ......................................................................................... 7

ARGUMENT ................................................................................................................ 7

    I.    Damigo Submits No Evidence to Dispute Plaintiffs' Statement of Undisputed Facts and Fails to Rebut Plaintiffs' Entitlement to Summary Judgment .................................................................................................. 7

    II.    Plaintiffs are Entitled to Summary Judgment that the Nominal and Compensatory Damages, Costs, and Punitive Damages are Nondischargeable Pursuant to Section 523(a)(6) ................................................ 11

        A.    Collateral Estoppel Applies ............................................................. 12

        B.    The Jury's Verdict Finding Damigo Liable for Civil Conspiracy Establishes Willful and Malicious Injury ........................................ 13

        C.    The Punitive Damages Are Nondischargeable ................................ 15

    III.    Plaintiffs are Entitled to Summary Judgment that the Reimbursable Expenses Are Not Discharged. ............................................................ 17

CONCLUSION .......................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Nat'l Prop. & Cas. Co. v. Stubbs*,
　512 F. Supp. 3d 1132 (D. Nev. 2021) ................................................................................. 8

*Banga v. First USA*,
　29 F. Supp. 3d 1270 (N.D. Cal. 2014) .......................................................................... 9, 17

*Barboza v. New Form, Inc. (In re Barboza)*,
　545 F.3d 702 (9th Cir. 2008) ........................................................................................... 8, 9

*Bartenwerfer v. Buckley*,
　598 U.S. 69 (2023) ......................................................................................................14, 15

*Beard v. Banks*,
　548 U.S. 521 (2006) ........................................................................................................... 9

*Bravo v. U.S. Life Ins. Co. in City of N.Y.*,
　701 F. Supp. 2d 1145 (E.D. Cal. 2010) .............................................................................. 9

*Cal. Franchise Tax Bd. V. Sienega (In re Sienega)*,
　No. 14-30986-B-7, Adv. Proc. No. 18-2191, 2019 WL 6977822, (Bankr. E.D.
　Cal. Dec. 17, 2019), *aff'd*, 619 B.R. 405 (B.A.P. 9th Cir. 2020), *aff'd*, 18 F.4th
　1164 (9th Cir. 2021) ........................................................................................................... 9

*Cohen v. De la Cruz*,
　523 U.S. 213 (1998) ....................................................................................................15, 16

*Commonwealth v. Davis*,
　290 Va. 362 (2015) ........................................................................................................... 11

*De Jonge v. Oregon*,
　299 U.S. 353 (1937) ......................................................................................................... 12

*Diamond v. Villelli–Kolcum (In re Diamond)*,
　285 F.3d 822 (9th Cir. 2002) ........................................................................................ 14,15

*Duncan v. Duncan (In re Duncan)*,
　488 F.3d 725 (4th Cir. 2006) ............................................................................................ 17

*Ewers v. Cottingham (In re Cottingham)*,
　473 B.R. 703 (B.A.P. 6th Cir. 2012) ................................................................................ 13

*Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*,
　249 F.3d 1132 (9th Cir. 2001) ............................................................................................ 9

# TABLE OF AUTHORITIES
## CONTINUED

Page(s)

*Gray v. Wenzel (In re Gray)*,
　B.A.P. No. AZ-10-1304-MkMaD, No. 08-11894, Adv. Proc. No. 08-00931,
　2011 WL 4503078 (B.A.P. 9th Cir. July 7, 2011) .................................................................. 16, 17

*Jenkins v. IBD, Inc.*,
　489 B.R. 587 (Bankr. D. Kansas 2013) .................................................................................. 16, 17

*Klapp v. Landsman (In re Klapp)*,
　706 F.2d 998 (9th Cir. 1983) .......................................................................................................... 8

*Krein v. Szewc (In re Szewc)*,
　568 B.R. 348 (D. Or. 2017) .......................................................................................................... 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
　475 U.S. 574 (1986) ........................................................................................................................ 8

*Multiut Corp.v. Draiman (In re Draiman)*,
　No. 05 B 20535, Adv. Proc. No. 05 A 01783, 05 A 01784, 2006 WL 1876972
　(Bankr. N. D. Ill. June 22, 2006) ................................................................................................. 13

*N.A.A.C.P. v. Claiborne Hardware Co.*,
　458 U.S. 886 (1982) ...................................................................................................................... 12

*Ponce v. Csigi (In re Csigi)*,
　No. 23-00617, Adv. Proc. No. 23-90019, 2024 WL 5165186 (Bankr. D. Haw.
　Dec. 17, 2024) ................................................................................................................................. 8

*Silva v. Smith's Pac. Shrimp (In re Silva)*,
　190 B.R. 889 (B.A.P. 9th Cir. 1995) ........................................................................................... 11

*Snoke v. Riso (In re Riso)*,
　978 F.2d 1151 (9th Cir. 1992) ....................................................................................................... 8

*Suarez v. Barrett (In re Suarez)*,
　400 B.R. 732 (B.A.P. 9th Cir. 2009) ........................................................................................... 16

*Valentine v. Holmes (In re Valentine)*,
　648 B.R. 324 (Bankr. E.D. Cal. 2022) .......................................................................................... 9

*Wegesend v. OneWest Bank (In re Wegesend)*,
　B.A.P. No. HI-14-1236-KuJuKi, No. 13-01686, Adv. Proc. No. 13-90085,
　2015 WL 736017 (B.A.P. 9th Cir. Feb. 20, 2015) ..................................................................... 10

*Yogi v. Hilgartner (In re Hilgartner)*,
　91 F.4th 186 (4th Cir. 2024) ......................................................................................................... 15

*Zuckerman v. Crigler (In re Zuckerman)*,
　613 B.R. 707 (B.A.P. 9th Cir. 2020) ...................................................................................... 14, 15

**Statutes**

11 U.S.C.
   § 523(a) ............................................................................................................... 15
   § 523(a)(2)(A) .................................................................................................... 15
   § 523(a)(6) ..................................................................................................... *passim*

Va. Code § 8.01-42.1(A) ............................................................................................ 14

**Other Authorities**

Federal Rule of Bankruptcy Procedure 7056 ............................................................... 9

Federal Rule of Civil Procedure 56(c) ......................................................................... 9

Local Rule 7056-1(b) ................................................................................................... 8

**SUPPLEMENTAL TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|---|---|
| ***Damigo MSJ Memo.*** | Debtor's Memorandum in Support of Motion for Summary Judgment (Dkt. No. 91) |
| ***Damigo Opp. to Pls.' MSJ or Opposition*** | Debtor's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment (Dkt. No. 107) |
| ***Pls.' MSJ Memo.*** | Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment (Dkt. No. 97) |
| ***Pls.' Opp. to Damigo MSJ*** | Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (Dkt. No. 108) |
| ***Pls.' SUF*** | Statement of Undisputed Facts in Support of Plaintiffs' Motion for Summary Judgment (Dkt. No. 92) |

**PRELIMINARY STATEMENT**

Plaintiffs[1] are entitled to summary judgment because there is no genuine dispute of material fact that Damigo willfully and maliciously injured Plaintiffs by his participation in a conspiracy to commit racially, ethnically, and religiously motivated harassment and violence, as well as assault or battery, at the Unite the Right event in Charlottesville, Virginia in August 2017. After extensive litigation, a jury in the Charlottesville Action found Damigo liable to Plaintiffs for damages and costs because of his participation in the conspiracy. His liability was upheld by the Virginia District Court and the Fourth Circuit Court of Appeals, and a final judgment was entered against him in the amount of $3,096,254.32. Damigo does not dispute these facts. Nor could he. Instead, he argues—incorrectly—that Plaintiffs cannot rely on the Charlottesville Judgment. That is incorrect as a matter of law, as shown below. But even if it were true, Damigo has not presented any evidence to dispute any of the facts set forth in Plaintiffs' Statement of Undisputed Facts. While collateral estoppel prevents Damigo from avoiding the jury verdict and findings made in the full evidentiary trial in which he participated, even without application of that doctrine, the undisputed facts more than amply demonstrate that Damigo willfully and maliciously injured Plaintiffs. Accordingly, Plaintiffs are entitled to summary judgment.

Further, Damigo's attempts to discharge his debts related to the Punitive Damages and Reimbursable Expenses also fail. Based on the evidence presented to the jury, the Virginia District Court found that Damigo acted deliberately, intentionally, and with malice. Finally, the Reimbursable Expenses are an entirely post-petition obligation and not subject to discharge.

**ARGUMENT**

**I. DAMIGO SUBMITS NO EVIDENCE TO DISPUTE PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS AND FAILS TO REBUT PLAINTIFFS' ENTITLEMENT TO SUMMARY JUDGMENT**

Damigo's Opposition fails to establish that there are any genuine disputes of material fact that would preclude summary judgment in favor of the Plaintiffs.

---

[1] Unless stated otherwise, defined terms have the meaning ascribed to them in the Table of Abbreviations in the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment (Dkt. No. 97) ("Pls.' MSJ Memo.").

As an initial matter, Damigo misstates the legal standard applicable to this motion and asserts that Plaintiffs must satisfy a "heightened" burden on summary judgment. Damigo Opp. to Pls.' MSJ at 4. However, as the cases that Damigo cites recognize, the party moving for summary judgment bears the burden of proof only by a preponderance of the evidence—no more. *See Ponce v. Csigi (In re Csigi)*, No. 23-00617, Adv. Proc. No. 23-90019, 2024 WL 5165186, at *2 (Bankr. D. Haw. Dec. 17, 2024) (citing *Grogan v. Garner*, 498 U.S 279, 291 (1991) ("The party objecting to nondischargeability of certain debts carries the burden of proof by the preponderance of the evidence."). The policy considerations Damigo references that inform interpretation on appellate review as described in *Snoke v. Riso (In re Riso)*, 978 F.2d 1151 (9th Cir. 1992), in no way alter the Plaintiffs' burden. *See Klapp v. Landsman (In re Klapp)* 706 F.2d 998, 999 (9th Cir. 1983) ("A canon of interpretation adjuring strictness is not, however, a justification for abandoning good sense."). When, as in this case, plaintiffs have sufficiently supported their motion for summary judgment, the burden shifts to the non-moving party to set forth specific evidence showing that there is a genuine dispute as to material facts which needs to be resolved through a trial. *Barboza v. New Form, Inc.*, *(In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008). A disputed fact is "material" if it could affect the outcome of the suit under governing law. *Id*. A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the non-moving party. *Id*. Establishing that such a genuine dispute exists requires showing that there is more than just some "metaphysical doubt" about the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the party opposing summary judgment "must show that a judge or jury is required to resolve the parties' differing versions of the truth." *Am. Nat'l Prop. & Cas. Co. v. Stubbs*, 512 F. Supp. 3d 1132, 1135 (D. Nev. 2021).

Damigo has failed to raise any dispute whatsoever about the material facts of this Adversary Proceeding. Plaintiffs submitted a detailed Statement of Undisputed Facts thoroughly citing to the record in the Charlottesville Action along with 52 supporting exhibits (in addition to the 17 joint exhibits submitted by the parties). *See* Dkt. Nos. 92, 96, 98–103. Under Local Rule 7056-1(b), Damigo was required to "reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts which are undisputed and deny those which are disputed" and provide citations

supporting each denial. He did not do so. *See Valentine v. Holmes (In re Valentine)*, 648 B.R. 324, 328 (Bankr. E.D. Cal. 2022) ("This court's local rules . . . stress the importance of disputing assertions of undisputed facts" and "[f]ailure to dispute an assertion of fact permits the court to consider the fact undisputed for purposes of a motion for summary judgment and grant summary judgment."); *Cal. Franchise Tax Bd. v. Sienega (In re Sienega)*, No. 14-30986-B-7, Adv. Proc. No. 18-2191, 2019 WL 6977822, at *2 (Bankr. E.D. Cal. Dec. 17, 2019), *aff'd*, 619 B.R. 405 (B.A.P. 9th Cir. 2020), *aff'd*, 18 F.4th 1164 (9th Cir. 2021) (granting summary judgment for plaintiff where "defendant failed to specifically challenge—and therefore did not dispute—plaintiff's undisputed facts" and, accordingly, "the court deem[ed] all of plaintiff's undisputed facts . . . admitted by the defendant for purposes of plaintiff's summary judgment motion").[2]

Rather than respond to the undisputed factual record presented by Plaintiffs, Damigo's Opposition simply asserts that he "does not concede and has never conceded that the alleged facts in plaintiffs' SUF are undisputed." Damigo Opp. to Pls.' MSJ at 8. However, such a denial in his pleading, without the submission of evidence supporting a purported factual dispute, does not create a genuine issue of material fact. Under Federal Rule of Civil Procedure 56(c), incorporated by Federal Rule of Bankruptcy Procedure 7056, the non-moving party "may not rely on denials in the pleadings but must produce specific evidence . . . to show that the dispute exists." *In re Barboza*, 545 F.3d at 707 (quoting *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991)); *see also Banga v. First USA*, 29 F. Supp. 3d 1270, 1275 (N.D. Cal. 2014) ("Bald assertions that genuine issues of material fact exist are insufficient."). Moreover, by failing to respond, Damigo is deemed to have admitted Plaintiffs' Statement of Undisputed Facts. *See Beard v. Banks*, 548 U.S. 521, 527 (2006) ("[B]y failing specifically to challenge the facts identified in the [moving party's] statement

---

[2] Damigo asserts that his "motion for summary judgment . . . is effectively an opposition to plaintiffs' motion for summary judgment." Damigo Opp. to Pls.' MSJ at 2. To the extent that Damigo is seeking that the Court convert his cross-motion into a supplemental opposition, he is incorrect. While it is true that courts may construe a party's submission of a statement of undisputed facts on cross-motion as a statement of *disputed* facts if submitted, *see, e.g.*, *Bravo v. U.S. Life Ins. Co. in City of N.Y.*, 701 F. Supp. 2d 1145, 1148 (E.D. Cal. 2010), Damigo filed neither a Statement of Undisputed Facts nor a Statement of Disputed Facts, so this option is unavailable to him. As the Ninth Circuit has held, "when parties submit cross-motions for summary judgment, "[e]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

of undisputed facts, [the non-moving party] is deemed to have admitted the validity of the facts contained in the [moving party's] statement."); *Wegesend v. OneWest Bank (In re Wegesend)*, B.A.P. No. HI-14-1236-KuJuKi, No. 13-01686, Adv. Proc. No. 13-90085, 2015 WL 736017, at *4 (B.A.P. 9th Cir. Feb. 20, 2015) (non-moving party which fails to "specifically challenge" facts as disputed and "present controverting evidence demonstrating the dispute . . . may be deemed to have admitted those facts.").

Nowhere in his Opposition does Damigo dispute that he entered the conspiracy to commit racially motivated harassment and violence and assault or battery for which the jury found him liable. In fact, his pleading only objects to two portions of Plaintiffs' Statement of Undisputed Facts, neither of which raises a factual dispute: "[P]laintiffs' repeated reference to Mr. Damigo's altercation with an antifa at the Berkeley demonstration," and Plaintiffs' inclusion of "offensive statements chanted, stated in chatrooms or on discord, or otherwise expressed by participants at the Unite the Right rally." Damigo Opp. to Pls.' MSJ at 10. In both cases, he claims these references were "designed for emotive appeal and confusion of the issues." *Id*. at 9–10. This is neither a valid objection, nor an effective denial; it provides no citation or other basis for identifying which of Plaintiffs' statements Damigo disagrees with, and crucially no evidence supporting an alternative version of the facts.[3] Additionally, far from being cited for emotive appeal or to confuse the issues, Damigo's actions at the Battle of Berkeley and the offensive statements Plaintiffs' cited are directly relevant to the willful and malicious nature of Damigo's conduct towards Plaintiffs. These actions and statements evidence Damigo's personal malice towards individuals like the Plaintiffs, and his personal knowledge that the violence at Unite the Right was substantially certain to occur. *See* Pls.' MSJ Memo. at 29–32.

---

[3] Damigo claims that Plaintiffs made "false statements" suggesting that he was "charged or convicted" in connection with the Battle of Berkeley. Damigo Opp. to Pls.' MSJ at 9. However, Plaintiffs' Statement of Undisputed Facts does not assert that Damigo was "charged or convicted" in connection with the Battle of Berkeley. *See* Pls.' SUF #10. Rather, Plaintiffs stated that Damigo was filmed punching a woman in the face at the protests (citing, among other things, a video of Damigo punching a woman in the face), that Damigo's actions were praised by his co-defendants (including Richard Spencer, James Alex Fields, Jr., and members of Identity Evropa) and that his actions were a direct inspiration for Unite the Right. *See* Pls.' SUF ## 10–12, 21–23, 70). In any event, whether Damigo was "charged or convicted" in connection with his conduct at the Battle of Berkeley is immaterial to the issues in Plaintiffs' Motion for Summary Judgment.

10    REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Damigo's only other objection is that Plaintiffs' Statement of Undisputed Facts "places an impossible burden on Mr. Damigo to counter the numerous supposedly undisputed facts plaintiffs have gleaned from a four-week trial with 900 exhibits and 35 witnesses." Damigo Opp. to Pls.' MSJ at 8. That is not a valid excuse for failing to respond to Plaintiffs' Statement of Undisputed Facts. Damigo is represented by experienced and skilled counsel and the parties' agreed-upon briefing schedule afforded him over a month to prepare his response. As the responding non-moving party on summary judgment, Damigo had the burden of disputing Plaintiffs' presentation of undisputed facts. *See In re Sienega*, 2019 WL 6977822, at *2 ("[T]he presence or absence of a genuine dispute of material facts - as identified by the parties - lies at the very core of the summary judgment process. It is therefore critical that, when responding to a motion for summary judgment, the non-moving party specifically challenge the moving party's undisputed facts.") (citing Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056)). Additionally, consideration of the trial record is completely appropriate when determining whether collateral estoppel applies. *See, e.g.*, *Silva v. Smith's Pac. Shrimp (In re Silva)*, 190 B.R. 889, 893 (B.A.P. 9th Cir. 1995) ("In order to properly apply the doctrine of collateral estoppel, a bankruptcy court must look at the entire record of the prior proceeding, not just the judgment."); *Commonwealth v. Davis*, 290 Va. 362, 370 (2015) (in the event of a general verdict, "the reviewing court must examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter" to determine if collateral estoppel applies).

Because Damigo's Opposition fails to establish that there is a genuine issue of material fact, Plaintiffs' Motion for Summary Judgment should be granted.

II. **PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT THAT THE NOMINAL AND COMPENSATORY DAMAGES, COSTS, AND PUNITIVE DAMAGES ARE NONDISCHARGEABLE PURSUANT TO SECTION 523(A)(6)**

Damigo's Opposition fails to rebut Plaintiffs' entitlement to summary judgment that the Nominal and Compensatory Damages, Costs, and Punitive Damages awarded to Plaintiffs against Damigo in the Charlottesville Action are nondischargeable in their entirety under Section 523(a)(6). As explained in Plaintiffs' Motion for Summary Judgment, as well as Plaintiffs' Opposition to Damigo's Motion for Summary Judgment, the jury in the Charlottesville Action actually and

necessarily decided that Damigo's conduct giving rise to Plaintiffs' injuries was willful and malicious, the Charlottesville Judgment is valid and final, and well-settled law of issue preclusion prevents Damigo from trying to further litigate these issues before the Court. *See* Pls.' MSJ Memo. at 27–36; Pls.' Opp. to Damigo MSJ at 16–21. The Nominal and Compensatory Damages awarded in the Charlottesville Judgment are subsequently nondischargeable under Section 523(a)(6). The Punitive Damages and Costs are also nondischargeable under Section 523(a)(6) because they are "ancillary" to, and arise from, the underlying willful and malicious injury. Damigo's Opposition fails to raise any genuine disputes of fact or establish that, as a matter of law, Plaintiffs are not entitled to summary judgment on this issue.

### A.　　Collateral Estoppel Applies

Damigo notes throughout his Opposition that there are "stringent requirements" to the collateral estoppel analysis but at no point argues that Plaintiffs have failed to meet their burden to show that collateral estoppel applies to the Charlottesville Judgment.[4] *See, e.g.*, Damigo Opp. to Pls.' MSJ at 8. Nor could he. Plaintiffs have carried their burden to show that Damigo is collaterally estopped from relitigating that his conduct willfully and maliciously injured Plaintiffs, an issue that was already decided by the jury in the Charlottesville Action. *See* Pls.' MSJ Memo. at Section I.A.

Damigo further argues that it would be contrary to the First Amendment for the Court to find his debts related to the Charlottesville Judgment nondischargeable. Damigo Opp. to Pls.' MSJ at 10. But "[t]he First Amendment does not protect violence." *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982); *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937) ("The question . . . [is] whether [the] utterances transcend the bounds of the freedom of speech which the Constitution protects. If the persons assembling . . . have formed or are engaged in a conspiracy against the public peace and order, they may be prosecuted for their conspiracy . . . ."). Plaintiffs were not

---

[4] Damigo concedes that the requirements for collateral estoppel are essentially the same under both federal and Virginia law. Damigo Opp. to Pls.' MSJ at 3. He also states that the requirements are the same under California law, although it is unclear why California law would apply to this action. *See id.* Plaintiffs agree that the analysis is essentially the same under either federal or state law. Applying either standard, Damigo is collaterally estopped from challenging the facts established in the Charlottesville Action evidencing his willful and malicious injury to Plaintiffs.

injured by Damigo's "offensive statements." Rather, despite Damigo's First Amendment defense, the jury in the Charlottesville Action found that Plaintiffs were injured by Damigo's malicious and willful conduct in entering into a civil conspiracy to commit racially, ethnically, and religiously motivated harassment and violence, as well as assault or battery. *See* Joint Exhibit 8 at 53 ("The abstract advocacy of lawlessness, or mere advocacy of the use of force, is protected speech. However, if you find that the Defendants have engaged in the violations of law I have instructed you on, including a conspiracy as alleged by Plaintiffs, you may not find that the Defendants' actions were protected by the First Amendment. The violations of law I have instructed you on are not protected by the First Amendment."). Accordingly, Damigo is also estopped from asserting the First Amendment in an attempt to evade the consequences of his conduct in this matter.

**B. The Jury's Verdict Finding Damigo Liable for Civil Conspiracy Establishes Willful and Malicious Injury**

The Opposition argues that the jury's verdict finding him liable for civil conspiracy is insufficient to establish that the Charlottesville Judgment is nondischargeable because Damigo is supposedly only "secondarily and vicariously liable" for Plaintiffs' injuries. *See* Damigo Opp. to Pls.' MSJ at 7. However, Damigo's conduct in conspiring to commit racially, ethnically, and religiously motivated harassment and violence, as well as assault or battery, establishes his own direct willful and malicious injury to Plaintiffs. Accordingly, Damigo was properly found liable for all resulting acts of his co-conspirators. Further, Damigo is wrong that civil conspiracy is insufficient to establish willful and malicious injury by the debtor for purposes of Section 523(a)(6). *See, e.g.*, *Multiut Corp.v. Draiman (In re Draiman)*, No. 05 B 20535, Adv. Proc. No. 05 A 01783, 05 A 01784, 2006 WL 1876972, at *8 (Bankr. N. D. Ill. June 22, 2006) (finding that "injury was 'by the debtor'" because "[a]s a member of the conspiracy to harm [the creditor], [the debtor] is vicariously liable for the acts of [his or] her co-conspirator" and "the law imputes to [him or] her all of his acts taken in furtherance of the scheme") (citing *Pinkerton v. United States*, 328 U.S. 640 (1946)); *Ewers v. Cottingham (In re Cottingham)*, 473 B.R. 703, 711 (B.A.P. 6th Cir. 2012) (finding that debtor's "conspiracy in the conversion of Plaintiff's assets constitutes willful and malicious injury to Plaintiff and the entire debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(6)"). *See*

*also* Pls. Opp. to Damigo MSJ at Section I.A.1.

Damigo also argues that the jury verdict cannot support a Section 523(a)(6) exception because it is "complicated" and "fraught with uncertainty." Damigo Opp. to Pls.' MSJ at 7. But it is neither. The undisputed facts show that Damigo was found liable for civil conspiracy to "subject[] persons to actions of intimidation or harassment, motivated by racial, religious, or ethnic animosity . . ."; "direct[] violence at another person, motivated by racial religious, or ethnic animosity . . ."; "commit[] an unwanted touching that was neither consented to, excused, or justified . . ."; "engag[e] in an overt act intended to inflict bodily harm, or intended to place the victim in fear or apprehension of bodily harm . . ."; or "caus[e] a reasonable apprehension that force will be used unless a person willingly submits and caus[e] him to submit to the extent that he is denied freedom of action . . . ." Joint Exhibit 9 at 4; Joint Exhibit 8 at 38-39. It is immaterial that Plaintiffs chose not to bring certain claims against Damigo and that he was not found liable on others.[5] *See Krein v. Szewc (In re Szewc)*, 568 B.R. 348, 360 (D. Or. 2017) ("[I]t is not unusual for a 'debt' to be based on a theory different from the one argued to except it from discharge[.]"). And while the jury instruction stated that legally, the jury could find Damigo liable "based on only a slight connection between the defendant and the plan," the Virginia District Court's post-trial opinion made clear that the evidence was not slight but rather "overwhelming" and "more than substantial" that Damigo and his co-defendants "plann[ed] for months to provoke Antifa and its followers into a violent battle at Unite the Right" and that "violence was certainly foreseeable." Joint Exhibit 12 at 5, 6, 10.

Finally, Damigo attempts, and fails, to distinguish *In re Zuckerman* and *In re Diamond*, which considered the preclusive effect of prior court judgments in nondischargeability proceedings *generally* to analyze the standard for summary judgment. *See* Pls.' MSJ Memo. at 25 (citing *Zuckerman v. Crigler (In re Zuckerman)*, 613 B.R. 707 (B.A.P. 9th Cir. 2020); *Diamond v. Villelli– Kolcum (In re Diamond)*, 285 F.3d 822 (9th Cir. 2002)). Relying on *Bartenwerfer*, Damigo argues

---

[5] Plaintiffs did not bring their Va. Code § 8.01-42.1(A) claim against Damigo, which is why the magistrate judge found that Plaintiffs were not entitled to attorneys' fees under the fee-shifting provision of that statute. *See* Damigo Opp. to Pls.' MSJ at 7 (quoting ECF 1655 (Joint Exhibit 13) at 7).

1  that because *In re Zuckerman* and *In re Diamond* do not specifically relate to Section 523(a)(6)
2  they are "of limited relevance" for the analysis of nondischargeability.  *See* Damigo Opp. to Pls.'
3  MSJ at 4–5 (citing *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023)).  However, *Bartenwerfer* does not
4  stand for the proposition that "cases involving other [523(a)] exceptions are of limited relevance"
5  to an issue preclusion analysis.  *Id*. at 5.  The Supreme Court in *Bartenwerfer* instead addressed the
6  narrow question of whether Section 523(a)(2)(A) requires a debtor to personally commit fraud for
7  her debts to be nondischargeable.  *Bartenwerfer*, 598 U.S. at 72.  This is irrelevant to the issue for
8  which Plaintiffs cited *In re Zuckerman* and *In re Diamond*—*i.e.*, that this Court can consider the
9  preclusive effect of the Charlottesville Judgment on summary judgment.

        **C.**      **The Punitive Damages Are Nondischargeable**

Damigo asserts that the Punitive Damages are dischargeable because even if a civil conspiracy claim does satisfy Section 523(a)(6), Plaintiffs "must negate the possibility that the jury awarded punitive damages on a recklessness standard."  Damigo Opp. to Pls.' MSJ at 11–12.  But the standard the jury applied when awarding punitive damages is irrelevant because they arise from the jury's compensatory damages award based on the civil conspiracy claim.  The United States Supreme Court has held that once a court determines that a specific debt is nondischargeable under Section 523(a) due to the debtor's misconduct, *all* debts arising from that misconduct are nondischargeable.  *Cohen v. De la Cruz*, 523 U.S. 213, 219 (1998) (holding entire judgment, including punitive damages in the form of treble damages, nondischargeable).  The creditor need only show that the damages are traceable to the debtor's misconduct.  *Id*. at 220.  "Once it is established that specific money is for fraud, willful and malicious injury, or other conduct excepted under § 523(a), then any debt arising from the injury—not only the part of the debt that makes the victim whole—is non-dischargeable."  *Yogi v. Hilgartner (In re Hilgartner)*, 91 F.4th 186, 193–94 (4th Cir. 2024) (internal quotations omitted).  Both the Fourth and Ninth Circuits have found punitive or other damages as well as fees and costs arising from an injury caused by nondischargeable conduct to also be nondischargeable.  *See* Pls.' MSJ Memo at 36–37 (collecting cases).  As the record reflects, the Virginia District Court found that Damigo willfully, intentionally, and maliciously engaged in a civil conspiracy that injured the Plaintiffs.  *See* Joint Exhibit 12 at 75

(finding that Damigo and his co-defendants' conduct "was deliberate and intentional and the product of malice (as opposed to merely negligent)" and "far exceeds the standard of conduct deemed reprehensible in the courts."). As a measure of damages stemming from that conduct, the Punitive Damages are also nondischargeable. *See Cohen*, 523 U.S. 213 at 219; *Suarez v. Barrett (In re Suarez)*, 400 B.R. 732, 738 (B.A.P. 9th Cir. 2009) (when compensatory damages are nondischargeable, other awards arising from that nondischargeable conduct are also nondischargeable).

But the Punitive Damages are also independently nondischargeable because they were based on Damigo's willful and malicious conduct. As the Virginia District Court explained in the post-trial order, the jury found that Damigo's conduct "demonstrated deliberate indifference to a great risk of harm" "and was deliberate and intentional and the product of malice (as opposed to merely negligent)." Joint Exhibit 12 at 75. The Virginia District Court's post-trial opinion makes clear that the Punitive Damages were in fact awarded because of Damigo's deliberate, intentional, and malicious conduct and thus are nondischargeable.

None of the cases that Damigo cites requires this Court to hold otherwise or supports Damigo's position. Damigo has seized on the language in *In re Gray* to argue that the Punitive Damages "flowed from dischargeable conduct." Damigo Opp. to Pls.' MSJ at 13 (citing *Gray v. Wenzel (In re Gray)*, B.A.P. No. AZ-10-1304-MkMaD, No. 08-11894, Adv. Proc. No. 08-00931, 2011 WL 4503078, at *10 (B.A.P. 9th Cir. July 7, 2011)). But Damigo misapplies *In re Gray*. The *In re Gray* court followed *Cohen*'s rule that all debts flowing from—or traceable to—nondischargeable conduct are nondischargeable. 2011 WL 4503078, at *10 (citing *Cohen*, 523 U.S. 213 at 220). And in *Jenkins*, the jury instruction allowed an award of punitive damages based on willful, malicious, *or* fraudulent conduct. *Jenkins v. IBD, Inc.*, 489 B.R. 587, 601 (Bankr. D. Kansas 2013).

Both *In re Gray* and *Jenkins* are distinguishable. In neither case did the creditors introduce a prior court judgment awarding compensatory damages based on willful and malicious conduct. *See In re Gray*, 2011 WL 4503078, at *6–7; *Jenkins*, 489 B.R. at 594–600. The Ninth Circuit B.A.P. in *In re Gray* found for the debtor-defendant simply because the creditors failed to put forth

evidence tracing the attorneys' fees and costs at issue to the nondischargeable conduct identified in the relevant state court litigation. 2011 WL 4503078, at *10–*11. In *Jenkins*, the district court determined that it could not "conclusively conclude that the jury verdict and state-court judgments contemplated standards identical to those required under § 523(a)(6)." 489 B.R. at 602. Like *In re Gray*, in *Jenkins* the creditors failed to show any conclusive evidence that the debtor-defendant had acted in a willful and malicious manner.

In contrast, here Plaintiffs have introduced an abundance of undisputed evidence from the trial record that the Punitive Damages were awarded based on Damigo's willful and malicious conduct. *See, e.g.*, Pls.' SUF ## 6, 13, 15, 20, 24, 29, 39, 41, 48, 52, 58, 60, 63, 67. The Virginia District Court not only upheld the awarding of Punitive Damages, it also stated that Damigo acted willfully and maliciously in regard to the compensatory damages to which the Punitive Damages are traced. Joint Exhibit 12 at 75 (Virginia District Court's post-trial finding that Damigo's conduct was "deliberate and intentional," and "the product of malice"); *see also* Joint Exhibit 8 at 63 (jury instruction requiring "extreme or outrageous conduct" to award punitive damages). Damigo's willful and malicious conduct causing Plaintiffs' injuries was the basis of the Compensatory and Nominal Damages awarded against him; Plaintiffs therefore established the requisite conduct for nondischargeability under Section 523(a)(6), and the Punitive Damages necessarily flow from that finding.

### III. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT THAT THE REIMBURSABLE EXPENSES ARE NOT DISCHARGED

Damigo's Opposition fails to rebut Plaintiffs' argument that the Reimbursable Expenses are a post-petition obligation not subject to discharge because they arose after the Petition Date.

*First*, Damigo incorrectly argues that the Reimbursable Expenses fall under the Bankruptcy Code's definition of "claim" because they were "based on an agreement that predated his filing of his bankruptcy petition." *See* Damigo Opp.to Pls.' MSJ at 14. As detailed in Plaintiffs' Opposition to Damigo's Motion for Summary Judgment, even a cursory review of the ESI Stipulation & Order shows that it did not give Plaintiffs a pre-petition "right to payment" and, therefore, the Reimbursable Expenses were not a pre-petition claim. *See* Pls. Opp. to Damigo MSJ at Section II.

Instead of creating an enforceable obligation between Plaintiffs and Damigo and his co-defendants, the ESI Stipulation and Order did the opposite, stating that it "does not obligate Defendants to pay any fees or costs incurred by the Third Party Discovery Vendor at this time…" *See* Joint Exhibit 6 at 7. Whether "any such obligation" would exist was "to be determined at a later date." *Id.* at 8. In addition, the ESI Stipulation and Order stated unequivocally that it "does not prejudice Defendants' rights to oppose any request made by Plaintiffs to recover those expenses." *Id*. at 7–8. Accordingly, Plaintiffs had no right to payment for the Reimbursable Expenses under the ESI Stipulation and Order and instead Damigo's obligation for the Reimbursable Expenses (all of which were incurred post-petition) first arose after the Petition Date. *See* Joint Exhibit 7 at 2.

　　　　*Second*, Damigo incorrectly claims that the Magistrate Judge's March 7, 2023 report and recommendation entered in the Charlottesville Action "affirmed" that the Reimbursable Expenses were a pre-petition contingent and unliquidated claim. *See* Damigo Opp. to Pls.' MSJ at 14 (citing Dkt. No. 1656 (Joint Exhibit 14)). The Magistrate Judge did not render any opinion that the Reimbursable Expenses were a pre-petition contingent and unliquidated claim—he simply recited the terms of the ESI Stipulation and Order providing that the parties in the Charlottesville Action, at Plaintiffs' expense, would engage a third party vendor to conduct the collection and production of ESI from Damigo and his co-defendants, and that engagement would be "without prejudice to Plaintiffs' ability to seek to recover" those expenses from the defendants "at a later date." Joint Exhibit 14 at 2.

　　　　*Third*, even if Damigo were correct that the ESI Stipulation and Order should be treated as a pre-petition contract with an enforceable right to payment, these post-petition expenses would still not be discharged. As detailed in Plaintiffs' Opposition to Damigo's Motion for Summary Judgment, the Ninth Circuit has consistently held that certain obligations under pre-petition contracts are not discharged when the services were rendered post-petition on behalf of the debtor. *See* Plaintiffs' Opp. to Damigo MSJ at 24–26. Here all of the services were provided after the Petition Date (between March 1, 2019, and October 31, 2021), with the first invoices for Reimbursable Expenses issued in March 2019, approximately two months after Damigo's bankruptcy filing. *See* Joint Exhibit 14 at 3; Joint Exhibit 7 at 2. Plaintiffs did not seek to recover

the Reimbursable Expenses until March 2022. *See* Joint Exhibit 14 at 1. Moreover, if the Virginia District Court had not entered the ESI Stipulation and Order, Damigo and his co-defendants would have incurred, and been responsible to pay, these post-petition ESI expenses directly. *See* Joint Exhibit 14 at 2 (explaining that the ESI Stipulation and Order was put in place to enable Damigo and his co-defendants to comply with their discovery obligations). Had Damigo incurred these ESI expenses directly, he could not have used his bankruptcy to discharge his and his co-defendants' responsibility to pay these post-petition expenses, and the ESI Stipulation and Order does not change that result.

For these reasons, Damigo's Opposition fails to rebut that the Reimbursable Expenses are not subject to discharge, and Plaintiffs should be granted summary judgment as to the Reimbursable Expenses.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Summary Judgment in its entirety.

Respectfully submitted,

Dated: June 18, 2025                COOLEY LLP

By:  /s/ *Robert L. Eisenbach III*
       Robert L. Eisenbach III

Attorney for Plaintiffs

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

REPLY IN SUPPORT OF PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT