1  Glen K. Allen, admitted pro hac vice
5423 Springlake Way
2  Baltimore, MD 21212
Tel: 410-323-8665
3  glenallenlaw@protonmail.com

4  Attorney for Debtor and Defendant
Nathan Damigo
5
                UNITED STATES BANKRUPTCY  COURT
6
                EASTERN  DISTRICT OF CALIFORNIA
7
                      [MODESTO DIVISION]
8

9
   In re:                              Case No. 19-90003-E-7
10                                      Judge: Hon. Ronald Sargis
   NATHAN BENJAMIN DAMIGO,
11                                      DEBTOR'S REPLY
           Debtor                      MEMORANDUM IN FURTHER
12                                      SUPPORT OF DEBTOR'S MOTION
   Chapter Number: 7                    FOR SUMMARY JUDGMENT
13

14  _____
   ELIZABETH SINES, SETH              Adv. Pro. No. 19-09006-E
15  WISPELWEY, MARISSA BLAIR,
   TYLER MAGILL, APRIL MUNIZ,         Hearing Date: June 26, 2025
16  HANNAH PEARCE, MARCUS             Hearing Time: 10:30 a.m.
   MARTIN, NATALIE ROMERO,
17  JOHN DOE, AND CHELSEA
   ALVARADO                          Action Filed:
18                                     Trial Date:
           Plaintiffs
19
20            v.

21  NATHAN BENJAMIN DAMIGO
22
           Defendant
23
24
25 _____
26
27     Debtor and defendant Nathan Damigo, in accordance with Bankruptcy Rule
28
   DEBTOR'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR
   SUMMARY JUDGMENT

7056, Local Rule 7056-1, FRCP 56, and the Court's Scheduling Order, submits this reply memorandum in further support of his motion for summary judgment. Mr. Damigo will endeavor to be as concise as possible in this reply. The Court has already received over 100 pages of briefing essentially on the same issues from the parties' cross motions for summary judgment.

*

Plaintiffs seek to invoke the § 523(a)(6) exception to dischargeability and to do so by means of the collateral estoppel doctrine. As Mr. Damigo noted in his Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment ("Damigo Opposition"), both the § 523(a)(6) exception and collateral estoppel doctrine, separately, impose stringent burdens on the plaintiffs. Mr. Damigo's motion for summary judgment is based on the proposition that plaintiffs have failed to meet their stringent burdens.

*

Plaintiffs make the protective and secondary argument that if their invocation of collateral estoppel fails they are entitled to "an evidentiary hearing to determine if Damigo's conduct was willful and malicious." Pls' Opp. Memo at 22. No such evidentiary hearing is appropriate. If plaintiffs propose to rely on the 90 exhibits attached to their Statement of Undisputed Facts ("SUF") as the basis for their requested evidentiary hearing, their reliance is misplaced. As Mr. Damigo explained in his Opposition (at pages 8-9), the jury was under no obligation to accept plaintiffs'

DEBTOR'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

SUF and obviously did not do so, as it deadlocked on the two civil rights conspiracy claims (Counts I and II) in which Mr. Damigo was named a defendant and awarded only nominal damages on the Count III civil conspiracy count. These aspects of the jury's verdict are greatly inconsistent with the import of the plaintiffs' SUF.

If plaintiffs intend in their proposed evidentiary hearing to call witnesses, enter exhibits, and make legal arguments – essentially relitigate the four-week long *Sines v. Kessler* case -- such a proposed undertaking contradicts plaintiffs' repeated statements that they did *not* intend to relitigate the *Sines* case and this Court's admonition that the parties should not do so. Moreover it would raise a thicket of *res judicata* issues. *See Comer v. Comer*, 723 F.2d 737, 740 (9th Cir. 1984). As one example among many that could be offered, the plaintiffs in their Amended Complaint in *Sines* elected not to name Mr. Damigo as a defendant in the Count IV claim under the Virginia Statute. As a result, Mr. Damigo was never held directly liable on that count, which has rendered plaintiffs' reliance on the Virginia Statute as a basis for their attempted § 523(a)(6) exception problematic. Plaintiffs' decision not to name Mr. Damigo as a defendant in Count IV may have been for the commendable reason that they realized they lacked sufficient evidence to name him, or it may have been for other reasons, but in any event they are not entitled to a "do over."

*

Plaintiffs in their Opposition repeat (with some variations) a statement they made in substance many times in their initial memorandum, i.e., "the jury in the

Charlottesville Action found that Damigo engaged in a civil conspiracy for the purpose of violating the Virginia Hate Crime Statute and committing assault and battery; that members of the conspiracy did in fact violate the Virginia Hate Crime Statute and commit assault and battery; that as a result of the civil conspiracy Damigo participated in, Plaintiffs suffered injuries; and, that Damigo was jointly and severally liable for the Plaintiffs' injuries as reflected in the Amended Judgment." Pls' Opp. Memo. at 15. As Mr. Damigo explained in his Opposition memorandum, however, the reality regarding the jury' verdict was more complex, more fraught with uncertainty, and from the point of view of collateral estoppel more fatally problematic than plaintiffs' statements indicate. *See* Damigo Opposition at 6-7. Among other factors that Mr. Damigo identified in his Opposition was that the Magistrate Judge in the *Sines* case explicitly found that "[N]o Plaintiff plausibly alleged—let alone proved—that Damigo, Heimbach, Parrott, Hill, Tubbs, Schoep, Vanguard America, Identity Evropa, TWP, LOS, or NSM subjected him or her to racially, religiously, or ethnically motivated harassment, intimidation, or violence in violation of § 8.01-42.1(A)." ECF 1655 at page 7. The District Court did not alter the Magistrate Judge's finding; to the contrary, it approved and adopted it. ECF 1660. Notably, plaintiffs in their Opposition fail to mention the Magistrate Judge's statement.

*

Seeking to immunize their case from any persuasive influence from *In re Chien*, 2008 WL 84444802 (9th Cir. B.A.P. Feb. 3, 2008), *Kalmanson v. Adams (In re*

*Nofziger*), 361 B.R. 236 (M.D. Fla. 2006), *In re Eggers,* 51 B.R. 452 (Bankr. E.D. Tenn. 1985) and other cases Mr. Damigo cited in his initial memorandum regarding civil conspiracy claims, plaintiffs assert that these cases are (1) not binding, and (2) factually inapposite. It is true they are nonbinding; but so too are the cases that plaintiffs offer to counter them, *e.g., In re Draiman*, 2006 WL 1876972 (Bankr. N.D. Ill. June 22, 2006), *Ewers v. Cottingham (In re Cottingham)*, 473 B.R. 703 (6th Cir. B.A.P. 2012), and *Mass. Bay Ins. Co. v. Shaw (in re Shaw)*, 252 B.R. 211, 213 (Bankr. M.D. Fla. 2000). Also, although plaintiffs disparage *In re Chien* as merely an unpublished opinion, unpublished Ninth Circuit BAP cases are often cited for their persuasive authority and in fact plaintiffs cited several of them in their initial memorandum. *See, e.g., In re Smith,* 2009 WL 7809005 (9th Cir. B.A.P. Dec. 17, 2009); *In re Frye*, 2008 WL 84444822 (9th Cir. B.A.P. Aug. 19, 2008).

Mr. Damigo would acknowledge that although the cases cited by both parties can at some level be factually distinguished from the present case (nearly any two cases can be factually distinguished in some respect), nationwide there does appear to be a divergence of views with regard to whether a civil conspiracy claim can be a predicate for the § 523(a)(6) exception or more generally whether imputed liability from any source can support the exception. Mr. Damigo would urge the Court to adopt the *Nofziger / Eggers* line of cases for the following reasons: 1) they are the most consistent with the pro-debtor policies of the Bankruptcy Code; (2) they are the most consistent with the text and legislative history § 523(a)(6), as shown, e,g., in the

*Eggers* opinion;  and (3) *In re Chien*, although not binding, is persuasive authority for the *Nofziger / Eggers* line of cases that has never been questioned in the Ninth Circuit. Mr. Damigo would add that *Nofziger / Eggers* appears to be the majority line of cases. As the court in *In re Bruce,* 593 B.R. 765, 777 (Bankr. S.D. Ohio 2018) summarized:

> While the Magistrate may not have been required to pinpoint whose knowledge and misconduct formed the basis for the punitive damages award under state law principles, such specificity is required when determining nondischargeability pursuant to Section 523(a)(6).  Under this provision, the willful and malicious injury has to be an injury "*by the debtor* to another entity or to the property of another entity[.]"  11 U.S.C. § 523(a)(6) (emphasis added); *Hamilton v. Nolan (In re Nolan,)* 220 B.R. 727, 732 (Bankr. D.C. 1998) (noting that the plain meaning of this language requires that the debtor be the one whose willful and malicious conduct caused the injury). Consequently, the willful and malicious conduct of others, even if the debtor may be legally responsible for that conduct under state law, cannot be imputed to the debtor for purposes of Section 523a)(6).  *First Citizen's Nat'l Bank v. Murray (In re Murray)*, 2013 Bankr. LEXIS 5737, at *11-22 (Bankr. W.D. Tenn., Aug. 20, 2013) ("The majority of the time, courts have universally held that a person's willful and malicious actions cannot be imputed to another person for the purpose of holding that debt nondischargeable under 523(a)(6)" (internal quotation marks and citation omitted); *Nolan*, 220 B.R. at 732 ("This court agrees with the majority who have ruled that nondischargeability of a debt under § 523(a)(6) cannot be grounded on the imputation to the debtor of acts of another."); *Yelton v. Eggers (in re Eggers*), 51 B.R. 452, 453 (Bankr. E.D. Tenn. 1985).

\*

With respect to punitive damages, plaintiffs contend that the "extreme and outrageous" language in the punitive damages jury instruction renders the jury's punitive damages award nondischargeable.  But neither the language plaintiffs cite nor any other language in the jury instruction alters the reality that the jury was given

DEBTOR'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

options, and one of the options allowed them to award punitive damages on a recklessness standard forbidden by the Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). Many courts, in addition to the *Duncan v. Duncan,* 448 F.3d 725 case discussed in Damigo's Opposition, have held that collateral estoppel cannot apply to a punitive damages award under these circumstances. *See, e.g., In re Longenecker*, 2006 WL 205848 (M.D. N.C. 2006) at * 2-3; *In re Stalnaker*, 408 B.R. 440, 447-48 (M.D. Ga. 2009). Mr. Damigo would note also that that a case plaintiffs cite, *Ramsey v. Bernstein (In re Bernstein*, 197 B.R. 475, 482 (Bankr. D. Md. 1996), was decided prior to the Supreme Court's *Geiger* decision in 1998.

*

As to the Reimbursable Expenses issue, plaintiffs place a particular focus on language in the pre-petition ESI Stipulation and Order stating that the document "does not obligate Defendants to pay any fees or costs incurred by the Third Party Discovery Vendor at this time." But the phrase "at this time" logically implies that the obligation could arise in the future upon the happening of certain events – in other words, it was a contingent claim. As such, the document came within the "fair contemplation" test employed by the Ninth Circuit in these instances. *See In re Castellino Villa A.K.F. LLC*, 836 F.3d 1028, 34 (9th Cir. 2016). Under this test, "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." *Id*. The plaintiffs seem to suggest the ESI Stipulation and Order had no import at all. But if it was essentially a

DEBTOR'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

meaningless document, why did the parties enter into it?  And why did the Magistrate Judge cite to it with regard to the Reimbursable Expenses issue?  The reality is that it was not a meaningless document but one that set the stage for future claims that the parties reasonably contemplated, and thus fits well within the broad,  debtor-favoring definition of "claim" under the Bankruptcy Code.

*

Plaintiffs on several occasions quote general statements made by the Fourth Circuit in its *Sines v. Kessler* Appeal decision.  The issues on that appeal were quite narrow, namely, (1) whether the trial court properly employed joint and several liability doctrine, and (2) whether it properly interpreted Virginia's punitive damages cap.  In the course of its opinion, the Fourth Circuit elected to describe the case below using broad strokes and general statements, including the ones quoted by plaintiffs.  Given the narrowness of the issues before the appellate court, however, these general statements cannot fairly be described as holdings but rather as dicta that should not be used to satisfy the strict requirements for collateral estoppel.

*

The § 523(a)(6) exception consists essentially of five elements:  (1) willful and (2) malicious (3) injury (4) by the debtor (5) to another  entity or the property of another entity.  Plaintiffs have tended to analyze these elements separately but a better approach, Mr. Damigo submits, is to analyze them together holistically, beginning with the injury element. So the initial inquiry is:  what injuries do plaintiffs assert were "by" Mr. Damigo to the plaintiffs?  The answer is set forth on page 19 on

DEBTOR'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

plaintiffs' initial memorandum:  primarily the injuries caused by James Fields' actions in driving his car into a crowd that included a number of the plaintiffs;  and secondarily, the "psychological and emotional harm from the events of August 11, where they were surrounded by the mob of Alt-Right protestors led by Kessler, Spencer, Kline, and others at the torch march, spat upon, cursed at, and called racially discriminatory names."

So the element-by-element application of the § 523(a)(6) exception to Mr. Damigo is as follows:  Have plaintiffs established in accordance with § 523(a)(6)'s strict requirements that he willfully (i.e., with a subjective motive to inflict injury or believing that injury is substantially certain to result from his conduct, *see Carillo v. Su, (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002)), and maliciously (i.e., by committing a wrongful act intentionally that necessarily causes injury and is without just cause for excuse, *see Petralta v. Jercich (In re Jercic)h*, 238 F.3d 1202, 1209 (9th Cir. 2001)), injure certain plaintiffs by means of James Fields' bad conduct in driving into a crowd that included the plaintiffs or causing emotional harm to certain other plaintiffs by the torch march on August 11?  No affirmative answer is supported by the jury instructions or the jury verdict, which do not link Mr. Damigo to James Fields except by imputed, vicarious liability, nor link Mr. Damigo to any injuries to from the torch march.  Nor do plaintiffs SUFs (which Mr. Damigo does not concede are relevant) save the day for them.  On page 17 of their initial memorandum, plaintiffs describe the only connections they can muster between Mr. Fields and Mr. Damigo:

DEBTOR'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

"Damigo's co-defendant Fields was photographed with Kline and members of Vanguard America. SUF # 68. Fields had previously tweeted to Damigo: 'Defending the innocent is a good idea, defending private property is a good idea, both require Force,' SUF #69, and retweeted the video of Damigo punching a protestor at the Battle of Berkeley, SUF # 70." So, in summary, Fields was photographed with certain persons other than Mr. Damigo and tweeted a rather innocuous statement to Mr. Damigo that plaintiffs do not and cannot assert Mr. Damigo ever responded to or even saw. If such "undisputed facts," so gossamer thin and subject to huge gaps, were deemed sufficient to support the § 523(a)(6) exception, that exception would not be subject to the stringent requirements all relevant cases say it is and the pro-debtor policies of the Bankrupcy Code dictate it must be.

## CONCLUSION

Roberta Kaplan, the lead attorney for the plaintiffs in the *Sines v. Kessler* case, has publicly vowed that *"We absolutely can and will bankrupt these groups. And then we will chase these people around for the rest of their lives. So if they try to buy a new home, we will put a lien on the home. If they get a new job, we will garnish their wages."*[1] In furtherance of this goal, the plaintiffs in this case seek to saddle Mr.

---

[1] Allen Wexler, "Roberta Kaplan Takes White Supremacy to Court," *Moment Magazine*, January 6, 2020, **https://momentmag.com/roberta-kaplan-takes-white-supremacy-to-court/**.

Damigo, a disabled military veteran with limited means, with a $3 million + debt that will enable plaintiffs to "chase [him] around for the rest of [his] life," a vengeful and ideologically-driven goal diametrically at odds with the pro-debtor and rehabilitative policies of the Bankruptcy Code. For the reasons set forth in this and his other pleadings in this case Mr. Damigo submits he is a worthy debtor entitled to the fresh start and opportunity for course correction the Bankruptcy Code generously provides. He asks, accordingly, that his motion for summary judgment de granted and plaintiffs' request for a § 523(a)(6) exception be denied.

Respectfully submitted,


_____/s/_____

Glen K. Allen, Esq.
5423 Springlake Way
Baltimore, MD 21212
Attorney for Nathan Damigo, Debtor


## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2025 true and accurate copies of the foregoing were served via ECF procedures of this Court to all counsel of record.

_____ /s/ _____

Glen K. Allen, Esq.
5423 Springlake Way
Baltimore, MD 21212
Attorney for Nathan Damigo, Debtor

DEBTOR'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT