*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. 19-90003 |
| | ) |
| NATHAN BENJAMIN DAMIGO, | ) |
| | ) |
| Debtor. | ) |
| ———————————————— | ) |
| | ) |
| ELIZABETH SINES, et al., | ) Adv. Proc. No. 19-9006 |
| | ) Docket Control No. RLE-1 |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| NATHAN BENJAMIN DAMIGO, | ) |
| | ) |
| Defendant. | ) |
| ———————————————— | ) |

**This Memorandum Decision is not appropriate for publication.**
**It may be cited for persuasive value on the matters addressed.**

**JOINT MEMORANDUM OPINION AND DECISION ON
COUNTER MOTIONS FOR SUMMARY JUDGMENT:
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, DCN: RLE-1
DEFENDANT-DEBTOR'S MOTION FOR SUMMARY
JUDGMENT, NO DNC, DCKT. 89**

Plaintiffs in this Adversary Proceeding, Elizabeth Sines, Seth Wispelwey, Soronya Hudson (as successor to Marissa Blair), April Muñiz, Marcus Martin, Natalie Romero, Devin Willis, Chelsea Alvarado, and Thomas Baker ("Plaintiffs") move this court for an order granting summary judgment/adjudication pursuant to Fed. R. Bank. P. 7056 on its Count I alleged in the Complaint against Defendant-Debtor Nathan Benjamin Damigo ("Defendant-Debtor"). Defendant-Debtor filed his own counter Motion for Summary Judgment on May 8, 2025. Docket 89.

Plaintiffs seek through this Adversary Proceeding to have the debt owed by Defendant-Debtor pursuant to the Amended Judgment ("Amended Charlottesville Judgment") obtained by Plaintiffs in *Elizabeth Sines et al. V. Jason Kessler*, et al., Civil Action No. 3:17-cv-00072-NKM ("Charlottesville Action") determined nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

Plaintiffs request in Count I of the Amended Complaint that the court hold the entire award of the Amended Charlottesville Judgment as nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The Amended Complaint specifically states:

> Based upon the facts and supporting evidence alleged herein, the **amounts recoverable** and/or the damages arising **from** the Second Amended Complaint and **the Amended Judgment** in the Charlottesville Action (the "Claims") against Damigo are non-dischargeable under section 523(a)(6) of the Bankruptcy Code as having created a debt or debts owed to Plaintiffs for willful and malicious injury inflicted by Damigo.

Am. Compl. 8:11-15, Docket 82 (emphasis added).

In Count II of the Amended Complaint, Plaintiffs further request that the award of Reimbursable Expenses in the amount of $1,266,420.84 ("Reimbursable Expenses") be determined not to be discharged pursuant to 11 U.S.C. § 727(b), being an entirely post-petition claim. *Id.* at 9:13-15.

Defendant-Debtor requests the court grant his counter Motion for Summary Judgment as to both Count I and II and that the entire Amended Charlottesville Judgment be subject to discharge pursuant to 11 U.S.C. § 727(b).

At the initial hearing on this Motion, the court determined that a continued hearing was proper to allow for the court to prepare a more detailed tentative ruling clearing addressing the grounds and counter-arguments asserted by all parties. Therefore, the court continued the hearing on this Motion to provide a more detailed tentative ruling clearly stating the points addressed and conclusions made by the court.

**REVIEW OF MOTIONS, RESPONSES, AND RELATED PLEADINGS**

**Plaintiffs' Motion**

In Plaintiffs' Motion for Summary Judgment, Plaintiffs state with particularity as to the relief sought:

(1) Damigo's conduct—namely, conspiring to commit unlawful acts, including violations of the Virginia Hate Crimes Statute and assault or battery—was willful and malicious, and the debt arising therefrom for Nominal and Compensatory Damages is consequently nondischargeable under section 523(a)(6) of the Bankruptcy Code. Mot. 3:24-27.

(2) Damigo had a full and fair opportunity to litigate all issues and facts in the Amended Charlottesville Judgment and is collaterally estopped from re-litigating those facts and issues in this Adversary Proceeding. A jury found Damigo liable for civil conspiracy for conspiring to plan, promote, and enact racially, religiously, or ethnically motivated harassment, intimidation, or violence, as well as assault and battery, during two days of terror in Charlottesville, Virginia known as "Unite the Right" or the "Battle of Charlottesville," and for causing both physical and emotional injury to the Plaintiffs. The facts and issues underlying Plaintiffs' willful and malicious injury nondischargeability claims in this Adversary Proceeding were fully and fairly litigated to judgment in the Charlottesville Action, and Damigo is precluded from relitigating them here. *Id.* at 3:12-20.

(3) The Amended Charlottesville Judgment in the United States District Court for the Western District of Virginia, *Elizabeth Sines et al. V. Jason Kessler*, et al., Civil Action No. 3:17-cv-00072-NKM ("Charlottesville Action"), is included as Exhibit 17, Docket 100. The Amended Judgment awards Plaintiffs damages in the amount of $3,096,254.32, holding the Charlottesville Action Defendants, including Defendant-Debtor, jointly and severally liable.

**Plaintiffs' Pleadings in Support**

Plaintiffs file in support of their Motion a Memorandum of Points and Authorities (Docket 97) ("Memo"), the Declarations of Robert L. Eisenbach (Docket 95, 96), various Exhibits detailing the events of the trial in the Charlottesville Action and a Statement of Undisputed Facts (Docket 101).

Plaintiffs assert in their Memo that they received a federal court judgment, as affirmed on appeal in the Fourth Circuit, for a final judgment of $3,096,254.32 based on Defendant-Debtor's willful and malicious conduct. Mem. 8:1-17, Docket 97. Plaintiffs succeeded in the Charlottesville Action by jury trial. Plaintiffs seek to succeed here on the theory of collateral estoppel, and that 11 U.S.C. § 523(a)(6) renders this debt nondischargeable, as the damages awarded resulted from willful and malicious injury.

The court in the Charlottesville Action found the following:

1.    The jury did not reach a verdict on Counts I or II, but the jury returned a verdict in favor of the Plaintiffs as to liability on Counts III, IV, V and VI. Am. J., Ex. 17, Docket 100.

      a.    Count III is titled "Civil Conspiracy" alleging Defendant-Debtor

conspired with his Charlottesville Action Co-Defendants to accomplish unlawful and tortious acts, including maliciously causing Plaintiffs bodily injury. Second Am. Complt., Ex. 5 at 104-05, Docket 98.

b.   Count IV is titled "Negligence Per Se" alleging Defendant-Debtor engaged in an act of terrorism in violation of Virginia Code § 18.2-46.5. *Id.* at 106-07.

c.   Count V is titled "Civil Action for Racial, Religious, or Ethnic Harassment," alleging Defendant-Debtor engaged in acts of intimidation or harassment based on racial, religious, or ethnic animosity. *Id.* at 107-08.

d.   Count VI is titled "Assault and Battery," alleging Defendant-Debtor either assaulted or committed battery against Plaintiffs. *Id.* at 108.

2.   The Court held all of the Charlottesville Action Defendants jointly and severally liable for the nominal and compensatory damage awards on Counts III, IV, and V, which amount is $1,303,284. Am. J., Ex. 17, Docket 100.

3.   Defendant-Debtor was found liable for $58,333.33 in punitive damages. *Id.*

4.   Defendant-Debtor was found jointly and severally liable for a total of $468,216.15 in costs to all Plaintiffs. *Id.*

5.   Defendant-Debtor was found jointly and severally liable for a total of $1,266,420.84 in reimbursable expenses ("Reimbursable Expenses") to all Plaintiffs under the terms of the ESI Stipulation & Order. *Id.*

Mr. Eisenbach testifies as to the facts asserted in the Motion, Statement of Undisputed Facts, and Memo, and he authenticates the Exhibits. Decl., Dockets 95, 96.

**Defendant-Debtor's Opposition**

Defendant-Debtor filed an Opposition on June 11, 2025. Docket 107. Defendant-Debtor states:

1.   Defendant-Debtor's own motion for summary judgment, accordingly, is effectively an opposition to Plaintiffs' motion for summary judgment. Opp'n 2:13-16.

2.   Plaintiffs have in fact adopted a character assassination approach, packing as many incendiary and irrelevant allegations against Mr. Damigo into their memorandum as possible, with the aim of confusing the issues and predisposing the Court against Mr. Damigo. *Id.* at 3:21-25.

3.   This case is rather unusual in that Plaintiffs must satisfy two different heightened burdens in order to prevail. The first arises because Plaintiffs are invoking an exception to dischargeability under § 523. . . The second arises because Plaintiffs are invoking collateral estoppel doctrine and reasonable doubts about what was decided in the prior action should be resolved against the party seeking to assert preclusion. *Id.* at 4:6-19.

4.    By its terms, § 523(a)(6) only applies if the Defendant-Debtor is the wrongdoer. This demonstrates that, when Congress wanted to limit nondischargeability to the wrongdoer, it said so. *Id.* at 5:17-20.

   a.    No supporting legal authority is made in support of this proposition.

5.    Defendant-Debtor being found liable for violation of Count III, civil conspiracy, is not enough to support an exception to discharge under 11 U.S.C. § 523(a)(6). Opp'n 6:1-7:13.

   a.    Defendant-Debtor cites *In re Chien*, 2008 WL 84444802 (9th Cir. BAP, Feb. 7, 2008) in support of this proposition.

6.    Defendant-Debtor was not found primarily and directly liable for Counts IV and V – but only secondarily and vicariously liable. . . vicarious liability is not sufficient to support a § 523(a)(6) exception. *Id.* at 7:24-8:4.

   a.    Defendant-Debtor cites *In re Chien*, 2008 WL 84444802 (9th Cir. BAP, Feb. 7, 2008) and *In Re Eggers*, 51 B.R. 452 (Bankr. E.D. Tenn 1985) in support of this proposition.

7.    Punitive damages awarded on a recklessness standard are dischargeable. The jury instruction permitted an award of punitive damages based on the recklessness standard in the Charlottesville Action. The court was not clear whether the punitive damages were awarded on a recklessness standard, and so the punitive damages award should be discharged. *Id.* at 11:15-13:20.

   a.    Defendant-Debtor cites *In re Gray*, 2011 WL 450307 at * 10 (9th Cir. BAP July 7, 2011) and *Jenkins v. IBD, Inc.*, 489 B.R. 587, 601-02 and 601 n. 90 in support of this proposition.

8.    The Reimbursable Expenses were discharged because they were an unliquidated and contingent claim prior to Mr. Damigo filing bankruptcy. *Id.* at 13:21-14:14.

   a.    No supporting legal authority is made in support of this proposition.

**Defendant-Debtor's Counter Summary Judgment Motion**

On May 8, 2025, Defendant-Debtor moved the court for summary judgment against Plaintiffs. Docket 82. No factual or legal grounds are set forth in the Motion. Notwithstanding pleading shortcomings, the court considers the key facts listed in the Memorandum filed in support to fully address Defendant-Debtor's arguments:

1.    To support their invocation of § 523(a)(6), plaintiffs avail themselves of every possible opportunity to portray Mr. Damigo in a harsh light, including inflammatory labels, guilt by association, and stating as facts allegations that were never validated by the *Sines v. Kessler* jury verdict. Mot. 2:12-15, Docket 91.

2.    Plaintiffs' civil conspiracy claim – the only claim on which they prevailed

against Mr. Damigo in the *Sines v. Kessler* case– cannot support plaintiffs' request for the exception because such a claim impermissibly imputes conduct of others to the debtor, Mr. Damigo. *Id.* at 2:22-25.

3.   Such vicarious liability conflicts with the Fresh Start values in the Code, which require that exceptions to dischargeability be narrowly construed; the plain meaning of § 523(a)(6), particularly the "by the debtor" language in the exception; and the strict principles of collateral estoppel that apply. Mot. 3:1-2, Docket 91.

4.   The plaintiffs' claim for punitive damages against Mr. Damigo fails § 523(a)(6)'s stringent requirements for similar reasons. Under Supreme Court authority, the exception cannot be successfully invoked where punitive damages were or might have been awarded based on a recklessness standard. The jury instructions in *Sines v. Kessler*, however, permitted this, fatally undermining plaintiffs' reliance on § 523(a)(6). Mot. 3:3-8, Docket 91.

5.   The Reimbursable Expenses component cannot be included in this nondischargeability action because the Reimbursable Expenses were a "contingent" and "unliquidated" claim pre-petition and must be discharged. *Id.* at 3:9-14.

6.   Mr. Damigo was never found to have committed any illegal act by the Sines v. Kessler jury; he was found liable only on a single count of civil conspiracy, a tort. The only arguably illegal act he committed with regard to the UTR Rally was not leaving the area when asked, but that was such a minor matter he was merely fined $600. *Id.* at 13:14-18.

7.   In Virginia as elsewhere, collateral estoppel applies only in narrowly circumscribed circumstances. *Id.* at 15:2-4. Defendant-Debtor proceeds to list the elements of collateral estoppel in Virginia. *Id.* at 15:4-18.

8.   *Kalmanson v. Adams* (*In re Nofziger*), 361 B.R. 236 (Bankr. M.D. Fla. 2006) stands for the idea that mere liability under a civil conspiracy claim is not an adequate predicate for a § 523(a)(6) exception. Mot. 17:2-5, Docket 91.

9.   *In re Chien*, 2008 WL 84444802 (B.A.P. 9th Cir., Feb. 7, 2008) also stands for the idea that mere liability under a civil conspiracy claim is not an adequate predicate for a § 523(a)(6) exception. Mot. 18:11-15, Docket 91.

10.  Many of the inflammatory allegations made by Plaintiffs were never actually litigated and decided, so collateral estoppel principles cannot apply. *Id.* at 20:14-21:2.

11.  Under no reasonable interpretation, Mr. Damigo submits, can the jury be deemed to have actually and necessarily addressed the exact question that arises in this adversary proceeding, i.e., whether Mr. Damigo caused "willful and malicious injury" to the plaintiffs. *Id.* at 21:5-8.

**Plaintiff's Reply to Defendant-Debtor's Opposition**

Plaintiffs filed a Reply to the Opposition on June 18, 2025. Docket 110. Plaintiffs state:

1.   Plaintiffs are entitled to summary judgment because there is no genuine

6

dispute of material fact that Defendant-Debtor willfully and maliciously injured Plaintiffs by his participation in a conspiracy to commit racially, ethnically, and religiously motivated harassment and violence, as well as assault or battery, at the Unite the Right event in Charlottesville, Virginia in August 2017. *Id.* at 7:2-5.

2.     Defendant-Debtor's Opposition fails to establish that there are any genuine disputes of material fact that would preclude summary judgment in favor of the Plaintiffs because Defendant-Debtor submits no evidence to dispute the Plaintiffs' statement of Undisputed Facts. *Id.* at 8:23-9:1.

3.     As explained in Plaintiffs' Motion for Summary Judgment, as well as Plaintiffs' Opposition to Defendant-Debtor's Motion for Summary Judgment, the jury in the Charlottesville Action actually and necessarily decided that Defendant-Debtor's conduct giving rise to Plaintiffs' injuries was willful and malicious, the Amended Charlottesville Judgment is valid and final, and well-settled law of issue preclusion prevents Defendant-Debtor from trying to further litigate these issues before the Court. *Id.* at 11:27-12:3.

4.     Defendant-Debtor's conduct in conspiring to commit racially, ethnically, and religiously motivated harassment and violence, as well as assault or battery, establishes his own direct willful and malicious injury to Plaintiffs. Accordingly, Defendant-Debtor was properly found liable for all resulting acts of his co-conspirators. Further, Defendant-Debtor is wrong that civil conspiracy is insufficient to establish willful and malicious injury by the debtor for purposes of Section 523(a)(6). Reply 13:16-20.

5.     As the record reflects, the District Court in the Charlottesville Action found that Defendant-Debtor willfully, intentionally, and maliciously engaged in a civil conspiracy that injured the Plaintiffs. *See* Joint Exhibit 12 at 75 (finding that Defendant-Debtor and his Charlottesville Action Co-Defendants' conduct "was deliberate and intentional and the product of malice (as opposed to merely negligent)" and "far exceeds the standard of conduct deemed reprehensible in the courts."). Reply 15:27-16:3.

6.     The standard the jury applied when awarding punitive damages is irrelevant because they arise from the jury's compensatory damages award based on the civil conspiracy claim. *Id.* at 15:14-15. The United States Supreme Court has held that once a court determines that a specific debt is nondischargeable under Section 523(a) due to the debtor's misconduct, all debts arising from that misconduct are nondischargeable. *Cohen v. De la Cruz*, 523 U.S. 213, 219 (1998) (holding entire judgment, including punitive damages in the form of treble damages, nondischargeable). Reply at 15:15-19.

7.     But the Punitive Damages are also independently nondischargeable because they were based on Defendant-Debtor's willful and malicious conduct. As the District Court in the Charlottesville Action explained in the post-trial order, the jury found that Defendant-Debtor's conduct "demonstrated deliberate indifference to a great risk of harm" "and was deliberate and intentional and the product of malice (as opposed to merely negligent)." Joint Exhibit 12 at 75. Reply 16:8-12.

8.     The Reimbursable Expenses are not dischargeable because they arose post-petition. As the ESI Stipulation and Order stated, it "does not obligate [the Charlottesville Action Defendants] to pay any fees or costs incurred by the

1     Third Party Discovery Vendor at this time…" *See* Joint Exhibit 6 at 7.  Reply
      17:21-18:9.

2
         a.     No supporting legal authority is made in support of this proposition.

3
**Defendant-Debtor's Reply**
4  **to Plaintiffs' Opposition**

5     On June 18, 2025, Defendant-Debtor filed a Reply to Plaintiffs' Opposition to Defendant-

6  Debtor's counter Motion for Summary Judgment.  Docket 112.  Defendant-Debtor states:

7     1.    There should be no further evidentiary hearing if Plaintiffs' Motion for
            Summary Judgment is denied, otherwise such a hearing would implicate *res*
8           *judicata* principles.  Reply, 3:6-24, Docket 112.

9     2.    Plaintiffs' collateral estoppel argument fails because "the Magistrate Judge
            in the Sines case explicitly found that '[N]o Plaintiff plausibly alleged—let
10          alone proved—that Damigo, Heimbach, Parrott, Hill, Tubbs, Schoep,
            Vanguard America, Identity Evropa, TWP, LOS, or NSM subjected him or
11          her to racially, religiously, or ethnically motivated harassment, intimidation,
            or violence in violation of § 8.01-42.1(A).'"  Reply 4:14-21, Docket 112.

12
      3.    Mr. Damigo would urge the Court to adopt the *Nofziger / Eggers* line of
13          cases for the following reasons: 1) they are the most consistent with the
            pro-debtor policies of the Bankruptcy Code; (2) they are the most consistent
14          with the text and legislative history § 523(a)(6), as shown, e.g., in the *Eggers*
            opinion; and (3) *In re Chien*, although not binding, is persuasive authority for
15          the *Nofziger / Eggers* line of cases that has never been questioned in the
            Ninth Circuit.  Reply 5:24-6:2.

16
      4.    With respect to punitive damages, plaintiffs contend that the "extreme and
17          outrageous" language in the punitive damages jury instruction renders the
            jury's punitive damages award nondischargeable.  *Id.* at 6:23-26.

18
      5.    Again, the Reimbursable Expenses were a contingent claim pre-petition and
19          were properly discharged.  *Id.* at 7:14-8:6.

20    6.    In analyzing each required element of 11 U.S.C. § 523(a)(6), there is simply
            not enough in the jury verdict that would allow this court to find the debt as
21          nondischargeabe.  *Id.* at 8:21-10:14.

      7.
22                              **APPLICABLE LAW**

23  **Summary Judgment**

24    In an adversary proceeding, summary judgment is proper when "[t]he movant shows that

25  there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

26  of law." Fed. R. Civ. P. 56(a), incorporated by Fed. R. Bankr. P. 7056. The key inquiry in a motion

27  for summary judgment is whether a genuine issue of material fact remains for trial. Fed. R. Civ. P.

28  56(c), incorporated by Fed. R. Bankr. P. 7056; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,

248–50 (1986); 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.11[1][b] (3d ed. 2000). "[A dispute] is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute [over a fact] is 'material' only if it could affect the outcome of the suit under the governing law." *Barboza v. New Form, Inc. (In re Barboza )*, 545 F.3d 702, 707 (9th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To support the assertion that a fact cannot be genuinely disputed, the moving party must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A), incorporated by Fed. R. Bankr. P. 7056.

In response to a sufficiently supported motion for summary judgment, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine dispute for trial. *Barboza*, 545 F.3d at 707, citing *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th Cir. 2002). The nonmoving party cannot rely on allegations or denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery materials, to show that a dispute exists. *Id.* (citing *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In ruling on a summary judgment motion, the court must view all of the evidence in the light most favorable to the nonmoving party. *Barboza*, 545 F.3d at 707 (citing *County. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001)). The court "generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented." *Agosto v. INS*, 436 U.S. 748, 756 (1978). "[A]t the summary judgment stage [,] the judge's function is not himself to weigh the evidence and determine the truth of the matter[,] but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

For the two Motions for Summary Judgment, the issue presented to the court is even more

focused.  Plaintiffs assert that based upon issue preclusion, arising under Collateral Estoppel as a

sub-principle of *Res Judicata*, their Motion should be granted.  Defendant-Debtor, on the other hand,

asserts that the required elements for nondischargeability of debt pursuant to 11 U.S.C. § 523(a)(6)

were not necessarily determined and summary judgment based upon the Amended Charlottesville

Judgment is improper, so Defendant-Debtor should be granted summary judgment.[1]

**Willful and Malicious Injury**

11 U.S.C. § 523(a)(6) states:

> (6) for willful and malicious injury by the debtor to another entity or to the property
> of another entity. . .

The "modern" application of this law has been clearly enunciated by the Supreme Court and

augmented by the Ninth Circuit Court of Appeal.

The court begins with *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), in which a unanimous

Supreme Court stated that the standard for a debt being nondischargeable under 11 U.S.C.

§ 523(a)(6) as:

> The word "willful" in (a)(6) modifies the word "injury,"  indicating that
> nondischargeability takes a **deliberate or intentional *injury***, not merely a deliberate
> or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting
> from unintentionally inflicted injuries, it might have described instead "willful acts
> that cause injury." Or, Congress might have selected an additional word or words,
> *i.e.*, "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit
> observed, the (a)(6) formulation triggers in the lawyer's mind the category
> "intentional torts," as distinguished from negligent or reckless torts. Intentional torts
> generally require that the actor intend "the *consequences* of an act," not simply "the
> act itself." *Restatement (Second) of Torts § 8A, comment a*, p. 15 (1964) (emphasis
> added).
> . . .
> We hold that debts arising from recklessly or negligently inflicted injuries do
> not fall within the compass of § 523(a)(6). For the reasons stated, the judgment of the
> Court of Appeals for the Eighth Circuit is Affirmed.

*Kawaauhau v. Geiger*, 523 U.S. at 61-62, 64.

---

[1]  As discussed, if the required grounds for nondischargeability were not necessarily decided
(given the nature of the jury instructions or not clear findings for such grounds) in the prior non-
bankruptcy action and issue preclusion does not apply, such would not be a basis for granting Defendant-
Debtor a summary judgment motion.  Rather, if that is the case, then the nondischargeability action will
go to trial in the Bankruptcy Court, where the Bankruptcy Judge will then make the necessary findings
and conclusions.

1    In *Geiger* the creditor held a $355,000.00 judgment for medical malpractice.  The Supreme

2    Court determined that "mere" malpractice did not arise to the wilful and malicious standard for

3    nondischargeability.  In an eerily similar set of facts to the present Adversary Proceeding before this

4    court, the creditor in *Geiger* lost her right leg below the knee due to the malpractice.

5    The Supreme Court requires that the debtor have intended the "consequences of the act," not

6    merely the act itself.  The Supreme Court's conclusion is that "We hold that debts arising from

7    recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."

8    In 2010, twelve years after *Geiger*, the Ninth Circuit Court of Appeals had the opportunity

9    to address this willful and malicious injury standard.   As stated by the Ninth Circuit in *Ormsby v.*

10   *First Am. Title Co. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010), the willful injury standard

11   in this Circuit is met "only when the debtor has a subjective motive to inflict injury or when the

12   debtor believes that injury is substantially certain to result from his own conduct." *Carrillo v. Su (In*

13   *re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002).   This second part, "the debtor believes the injury is

14   substantially certain to result from his own conduct" requires such a belief be shown, not merely that

15   others would conclude such.

16   In *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002), the Ninth Circuit Court of

17   Appeals stated the requirements of 11 U.S.C. § 523(a)(6) as follows:

18

19   The question presented on appeal is whether a finding of "willful and malicious
     injury" must be based on the debtor's subjective knowledge or intent or whether such
     a finding can be predicated upon an objective evaluation of the debtor's conduct.
20   We hold that *§ 523(a)(6)*'s willful injury requirement is met **only when the debtor
     has a subjective motive to inflict injury or when the debtor believes that injury
21   is substantially certain to result from his own conduct.**

22   *Id*. at 1173.

23   With respect to the evidence of the subjective motive, the Ninth Circuit is clear that the court

24   does not merely accept what a debtor states his or her intent was, but in Footnote 6 in *Carillo v. Su*,

25   the Circuit states:

26   6. **To be clear, when we speak of "actual knowledge" we are not suggesting that
     a court must simply take the debtor's word for his state of mind.** In addition to
27   what a debtor may admit to knowing, **the bankruptcy court may consider
     circumstantial evidence that tends to establish what the debtor must have
28   actually known when taking the injury-producing action.** *See, e.g., Spokane Ry.*

*Credit Union v. Endicott (In re Endicott)*, 254 B.R. 471, 477 n. 9 (Bankr. D. Idaho, 2000) ("The use of the term 'objective' is not talismanic nor at odds with *Geiger* if it is viewed as **simply recognizing that a debtor will have to deal with any direct or circumstantial evidence which would indicate that he must have had a substantially certain belief that his act would injure, notwithstanding any subjective denial of such knowledge."**). This approach, however, remains fundamentally subjective in that it retains its focus on <u>what was actually going through the mind of the debtor at the time he acted.</u> This subjective approach explains how courts have typically resolved the applicability of § 523(a)(6) in the context of motor vehicle accidents. When car accidents occur and there is **no evidence, beyond evidence of (at times) extreme recklessness, that the driver expressly sought to crash into another, § 523(a)(6)'s nondischargeability provision typically has been found inapplicable.** *See Madden v. Fate (In re Fate)*, 100 B.R. 141 (Bankr. D. Mass. 1989); *Mugge v. Roemer (In re Roemer)*, 76 B.R. 126 (Bankr. S.D. Ill. 1987); *Cooper v. Noller (In re Noller)*, 56 B.R. 36 (Bankr. E.D. Wis. 1985); *In re Donnelly*, 6 B.R. at 23. When, however, the evidence demonstrates that the driver purposefully crashed his car into another's, § 523(a)(6) applies and the driver's debt stemming from that "accident" is nondischargeable. *See Stubbs v. Mode (In re Mode)*, 231 B.R. 295 (Bankr. E.D. Ark. 1999); *Grange Mut. Cas. Co. v. Chapman (In re Chapman)*, 228 B.R. 899 (Bankr. N.D. Ohio 1998).

For a determination that an obligation is nondischargeable pursuant to 11 U.S.C. § 523(a) the Plaintiff must establish the elements by the "ordinary preponderance-of-the-evidence standard." *Grogan v. Garner*, 498 U.S. at 291.

Injuries covered by the section 523(a)(6) discharge exceptions are not confined to physical damage or destruction; an injury to intangible personal or property rights is sufficient. *In re Rushing*, 161 B.R. 984 (Bankr. E.D. Ark. 1993). Thus, the conversion of another's property without the owner's knowledge or consent, done intentionally and without justification and excuse, is a willful and malicious injury within the meaning of the exception. *In re Lampi*, 152 B.R. 543 (C.D. Ill. 1993); *Security Bank of Nevada v. Singleton*, 10 C.B.C.2d 429, 37 B.R. 787 (Bankr. D. Nev. 1984); *Bombadier Corp. v. Penning (In re Penning)*, 22 B.R. 616 (Bankr. E.D. Mich. 1982).

**Virginia Law For the Amended Charlottesville Judgment**

<u>Civil Conspiracy</u>

The Amended Charlottesville Judgment in this case is from the District Court in the Western District of Virginia. The causes of actions asserted were based on Virginia law. Therefore, the court here must rely on Virginia law in discerning the elements of civil conspiracy for which Mr. Damigo had been found liable. The Supreme Court of Virginia has explained:

A criminal conspiracy is an agreement to commit a crime. *See Wright v. Commonwealth*, 224 Va. 502, 297 S.E.2d 711 (1982). A **civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose**, not in itself criminal or unlawful, by criminal or unlawful means. *Werth v. Fire Adjust. Bureau*, 160 Va. 845, 855, 171 S.E. 255, 259, *cert. denied*, 290 U.S. 659, 54 S.Ct. 74, 78 L.Ed. 570 (1933).

*Hechler Chevrolet, Inc. v. General Motors Corp.*, 337 S.E. 2d 744, 749 (Va. 1985) (emphasis added).

The Virginia Supreme Court has expressly addressed that for a civil conspiracy claim to exist, the actual wrongful conduct for which the conspiracy existed occurred and the harm was actually inflicted on the victim.

Because there can be no conspiracy to do an act that the law allows, *Werth*, 160 Va. at 855, 171 S.E. at 259, we have held that "an allegation of conspiracy, whether criminal or civil, must at least allege an unlawful act or an unlawful purpose" to survive demurrer. *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985). In other words, **actions for common law civil conspiracy** and statutory business conspiracy **lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious.** *See Beck v. Prupis*, 529 U.S. 494, 501, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000); *see also Almy v. Grisham*, 273 Va. 68, 80, 639 S.E.2d 182, 188 (2007) ("[I]n Virginia, a common law claim of civil conspiracy generally requires proof that the underlying tort was committed."); *Werth*, 160 Va. at 855, 171 S.E. at 259 (" 'To give action there must not only be conspiracy, but conspiracy to do a wrongful act.' ") (quoting *Transportation Co. v. Standard Oil Co.*, 50 W.Va. 611, 40 S.E. 591, 594 (1901)); *McCarthy v. Kleindienst*, 741 F.2d 1406, 1413 n. 7 (D.C.Cir.1984) (**"[C]onspiracy allegations ... do not set forth an independent cause of action; instead, such allegations are sustainable only after an underlying tort claim has been established.**" ); *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C.Cir.1983) ("Since **liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort**."); *Koster v. P & P Enters.*, 248 Neb. 759, 539 N.W.2d 274, 278 (1995) ("[A] claim of civil conspiracy is not actionable in itself, but serves to impose vicarious liability for the underlying tort of those who are a party to the conspiracy."); *Selle v. Tozser*, 786 N.W.2d 748, 756 (S.D.2010) ("[C]ivil conspiracy is merely a method of establishing joint liability for the underlying tort.").

*Dunlap v. Cottman Transmission Systems, LLC*, 754 S.E.2d 313, 317-18 (Va. 2014).

When an individual is found liable of conspiracy, either criminal conspiracy or civil conspiracy, the object of the conspiracy directly correlates to the degree of culpability. *See, e.g.*, Cal. Penal Code § 182 ("When [a defendant] conspire[s] to commit any other felony, they shall be punishable in the same manner and to the same extent as is provided for the punishment of that felony."); Va. Code Ann. § 18.2-22 (stating that the culpability is tied to the object of the conspiracy,

1   limiting punishment for committing the conspiracy to punishment for commission of the offense

2   itself). Building off this principle, it is surely the case that, for example, conspiring to vandalize

3   carries a lesser degree of culpability than conspiring to commit arson or conspiring to commit

4   aggravated bodily injury.

5        Here, the Amended Charlottesville Judgment having been entered, the District Court

6   concluded that the wrongful acts and injuries relating thereto are for (1) racially, ethnically, and

7   religiously motivated harassment and violence and (2) the assault and battery for which Defendant-

8   Debtor conspired with others to occur actually happened as he and his co-conspirators had planned.

9   Thus, Defendant-Debtor was found liable of civil conspiracy to commit these tortious acts and

10  suffers the financial damages relating thereto.

11
    <u>Committing Racially, Ethnically, and Religiously</u>
12  <u>Motivated Harassment And Violence</u>

13       Protection from racially, ethnically, and religiously motivated harassment and violence is

14  codified in the Virginia Code Ann. § 8.01-42.1, which gives rise to a civil cause of action. Va. Code

15  Ann. § 8.01-42.1 states:

16

17       A. An action for injunctive relief or civil damages, or both, shall lie for any person
         who is subjected to acts of (i) intimidation or harassment, (ii) violence directed
18       against his person, or (iii) vandalism directed against his real or personal property,
         where such acts are motivated by racial, religious, gender, disability, gender identity,
19       sexual orientation, or ethnic animosity.

20       B. Any aggrieved party who initiates and prevails in an action authorized by this
         section shall be entitled to damages, including punitive damages, and in the
21       discretion of the court to an award of the cost of the litigation and reasonable
         attorney fees in an amount to be fixed by the court.

22       C. The provisions of this section shall not apply to any actions between an employee
         and his employer, or between or among employees of the same employer, for
23       damages arising out of incidents occurring in the workplace or arising out of the
24       employee-employer relationship.

25       D. As used in this section:

         "Disability" means a physical or mental impairment that substantially limits
26       one or more of a person's major life activities.

27  <u>Assault and Battery</u>

28       The elements for establishing a civil cause of action for assault and battery follow the

common law elements for assault and battery in Virginia.  The Supreme Court of Virginia again

explains (emphasis added):

> The tort of assault consists of an **act intended to cause either harmful or offensive contact with another person or apprehension of such contact**, and that **creates in that other person's mind a reasonable apprehension of an imminent battery**. Restatement (Second) of Torts § 21 (1965); Friend § 6.3.1 at 226; *Fowler V. Harper, et al.*, The Law of Torts § 3.5 at 3:18–:19 (3d ed. Cum.Supp.2003).
>
> The **tort of battery is an unwanted touching which is neither consented to, excused, nor justified**. *See Washburn v. Klara*, 263 Va. 586, 561 S.E.2d 682 (2002); *Woodbury v. Courtney*, 239 Va. 651, 391 S.E.2d 293 (1990). Although these two torts "go together like ham and eggs," the difference between them is "that between physical contact and the mere apprehension of it. One may exist without the other." W. Page Keeton, Prosser and Keeton on Torts § 10 at 46; see also Friend § 6.3.

*Koffman v. Garnett*, 574 S.E. 2d 258, 261 (Va. 2003).

The term "malicious" has been defined in Virginia case law as "consisting of an evil or

rancorous motive influenced by hate; the purpose being to deliberately and wilfully injure the

plaintiff." *Kamlar Corp. V. Haley*, 299 S.E. 2d 514, 518 (Va. 1983) (internal quotations omitted).

The term "willful" means deliberate or intentional. *Hill v. Noyes*, Case No. LS-4105-4, 1991 WL

834990 at *2 (Va Cir. Ct. May 31, 1991).

In the Charlottesville Action, the judge described the Charlottesville Action Defendants'

actions as malicious in his Memorandum Decision (emphasis added):

> In other words, on both days, **the conduct was violent and physical** (as opposed to economic); demonstrated **deliberate indifference to a great risk of harm**; stretched over a substantial period on August 11 (and again on August 12); and **was deliberate and intentional and the product of malice (as opposed to merely negligent).** The evidence of **Defendants' conduct far exceeds the standard of conduct deemed reprehensible in the courts**. *See, e.g., Saunders v. Branch Banking & Trust Co of Va.*, 526 F.3d 142, 153 (4th Cir. 2008). Accordingly, under the evidence, the jury was entitled to conclude that Defendants acted reprehensibly such as to support a sizable award of punitive damages.

Ex. 12 at 75, Docket 100 (emphasis added).

Moreover, the judge in the Charlottesville Action spoke directly of Defendant-Debtor's

personal liability for the malicious conduct, stating (emphasis added):

> Under Virginia law, the jury's finding of liability on the civil conspiracy claim "meant that [Charlottesville Action Defendants] were held jointly and severally liable for the damages award." *See Tire Eng'g & Dist., LLC v. Shandong* Linglong Rubber Co., Ltd., 682 F.3d 292, 312 n. 10 (4th Cir. 2012); *see also Worrie v. Boze*, 95 S.E.2d 192, 198 (Va. 1956) ("**The conspirators are jointly and severally liable**

1  **for all damage resulting from the conspiracy**."), abrogated in part on other
2  grounds, *Station #2, LLC v. Lynch*, 695 S.E.2d 537, 541 (Va. 2010). **"The object of
   a civil conspiracy claim is to spread liability to persons other than the primary
3  tortfeasor."** *Gelber v. Glock*, 800 S.E.2d 800, 820 (Va. 2017); *see also La Bella
   Dona Skin Care, Inc.*, 805 S.E.2d at 406 (explaining that "civil conspiracy is a
4  mechanism for spreading liability amongst coconspirators for damages sustained **as
   a result of an underlying act that is itself wrongful or tortious**"). While [Debtor-
5  Defendant] and Identity Evropa argue that Plaintiffs' "argument regarding joint and
   several liability [ ] misses the mark," Dckt. 1593 at 4, they present no contrary law
6  to dispute Plaintiffs' authorities that under Virginia law, Defendants, as
   coconspirators, are liable for all damages resulting from the conspiracy.

7  Ex. 12 at 76-77, Docket 100 at 206-207.

8  **Issue Preclusion**

9      The doctrine of Issue Preclusion, formerly referred to as Collateral Estoppel, as a

10  subcategory of the Doctrine of *Res Judicata* provides that if an issue has been adjudicated in a prior

11  judicial proceeding, it cannot be relitigated in a subsequent judicial proceeding.

12      The bankruptcy court may give preclusive effect to a district or state court judgment as the

13  basis for excepting a debt from discharge.  As stated by the Supreme Court in *Grogan v. Garner*,

14  498 U.S. 279, 285 (1991) [emphasis added]:

15          Our prior cases have suggested, but have not formally held, that the
   principles of collateral estoppel apply in bankruptcy proceedings
16  under the current Bankruptcy Act. *See, e.g., Kelly v. Robinson*, 479
   U.S. 36, 48, n.8, 93 L. Ed. 2d 216, 107 S. Ct. 353 (1986); *Brown v.
17  Felsen*, 442 U.S. at 139, n.10. *Cf.  Heiser v. Woodruff*, 327 U.S. 726,
   736, 90 L. Ed. 970, 66 S. Ct. 853 (1946) (applying collateral estoppel
18  under an earlier version of the bankruptcy laws). Virtually every
   Court of Appeals has concluded that collateral estoppel is applicable
19  in discharge exception proceedings. *See In re Braen*, 900 F.2d at 630;
   *Combs v. Richardson*, 838 F.2d at 115; *Klingman v. Levinson*, 831
20  F.2d 1292, 1295 (CA7 1987); *In re Shuler*, 722 F.2d 1253, 1256
   (CA5), *cert. denied sub nom. Harold V. Simpson & Co. v. Shuler*, 469
21  U.S. 817, 83 L. Ed. 2d 32, 105 S. Ct. 85 (1984); *Goss v. Goss*, 722
   F.2d 599, 604 (CA10 1983); *Lovell v. Mixon*, 719 F.2d 1373, 1376
22  (CA8 1983); *Spilman v. Harley*, 656 F.2d 224, 228 (CA6 1981). *Cf.
   In re Rahm*, 641 F.2d 755, 757 (CA9) (prior judgment establishes
23  only a *prima facie* case of nondischargeability), *cert. denied sub nom.
   Gregg v. Rahm*, 454 U.S. 860, 70 L. Ed. 2d 157, 102 S. Ct. 313
24  (1981). **We now clarify that collateral estoppel principles do
   indeed apply in discharge exception proceedings pursuant to §
25  523(a).**

26      In applying the principles of Collateral Estoppel, it is important to distinguish Collateral

27  Estoppel issue preclusion, which prevents the re-determination of issues which were part of an

28  earlier judgment, and *Res Judicata* action preclusion which prevents the subsequent filing of an

1   action. Many of the cases in which the courts have held that *Res Judicata* does not apply to a state

2   court judgment have been when the debtor attempts to assert that a creditor's judgment for breach

3   of contract precludes the creditor from subsequently filing a nondischargeability action for fraud.

4           In *Cal-Micro, Inc. v. Cantrell,* 329 F.3d 1119 (9th Cir. 2003), the Ninth Circuit Court of

5   Appeals restated the established rule of law that 28 U.S.C. §1738 [2] requires the federal courts to

6   give full faith and credit to a state's (Virginia's) collateral estoppel principles, citing to the earlier

7   Ninth Circuit decision, *Gayden v. Nourbakhsh*, 67 F.3d 798, 800 (9th Cir. 1995). *See also Harmon*

8   *v. Kobrin (In re Harmon),* 250 F.3d 1240, 1245 (9th Cir. 2001). The court applies the forum state's

9   law of issue preclusion. *Id.*

10          With respect to the application of Issue Preclusion under Virginia Law, the Supreme Court

11  of Virginia has held:

12          Issue preclusion, also known as collateral estoppel, precludes "parties to the first
            action and their privies" from relitigating "any issue of fact actually litigated and
13          essential to a valid and final personal judgment in the first action." *Funny Guy, LLC*,
            293 Va. at 142, 795 S.E.2d 887 (emphasis added) (citation and internal quotation
14          marks omitted). The party seeking to assert issue preclusion must establish the
            following:

15
                    (1) the parties [or their privies] to the two proceedings must be the
16              same, (2) the issue of fact sought to be litigated must have been
                actually litigated in the prior proceeding, (3) the issue of fact must
17

18      _____

        [2] 28 U.S.C. § 1738.
19
                § 1738. State and Territorial statutes and judicial proceedings; full faith and
20              credit

21              The Acts of legislature of any State, Territory, or Possession of the United States,
                or copies thereof, shall be authenticated by affixing the seal of such State,
22              Territory or Possession thereto.

23              The records and judicial proceedings of any court of any such State, Territory or
                Possession, or copies thereof, shall be proved or admitted in other courts within
24              the United States and its Territories and Possessions by the attestation of the
                clerk and seal of the court annexed, if a seal exists, together with a certificate of a
25              judge of the court that the said attestation is in proper form.

26
                Such Acts, records and judicial proceedings or copies thereof, so authenticated,
27              shall have the same full faith and credit in every court within the United States
                and its Territories and Possessions as they have by law or usage in the courts of
28              such State, Territory or Possession from which they are taken.

                                            17

1     have been essential to the prior judgment, and (4) the prior proceeding must have resulted in a valid, final judgment against the
2     party against whom the doctrine is sought to be applied.

3     *Glasco v. Ballard*, 249 Va. 61, 64, 452 S.E.2d 854 (1995).

4  *Lane v. Bayview Loan Servicing, LLC*, 831 S.E. 2d 709, 714 (Va. 2019).

5     A court is not required to apply issue preclusion even if the threshold factors are met because

6  the court is also charged with determining whether issue preclusion "furthers the public policies

7  underlying the doctrine." *In re Harmon*, 250 F.3d at 1245 (citing *Lucido v. Super. Ct.*, 51 Cal.3d

8  335 (1990)). In short, the decision to apply issue preclusion is discretionary.

9     The party asserting issue preclusion "carries the burden of proving a record sufficient to

10  reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *In re Lambert*,

11  233 Fed. Appx. 598, 599 (9th Cir. 2007).

12                       **DISCUSSION**

13  **Civil Conspiracy**

14     In this case, the court finds issue preclusion is in effect because the elements for willful and

15  malicious injury by the Defendant-Debtor determined in the Charlottesville Action are essentially

16  identical to the elements willful and malicious injury for purposes of 11 U.S.C. § 523(a)(6). The

17  court declines any request to relitigate issues already decided. For this Motion and Adversary

18  Proceeding, Plaintiffs have documented that the Amended Charlottesville Judgment has been

19  entered which is based on civil conspiracy to commit assault and battery, and to commit actions of

20  harassment based on another's ethnic, racial, or religious views / identity. Moreover, Plaintiffs have

21  shown that the essential elements of willful and malicious injury have been committed by

22  Defendant-Debtor by directly participating in the civil conspiracy.

23     This decision is necessarily prompted by a guiding principle of conspiracy law: the object

24  of the conspiracy determines degree of culpability. Often the conspiracy itself is punished the same

25  as the completed object, but conspiracy is never given a greater punishment than the completed

26  object. Turning to this case, the court must analyze the object of conspiracy for which Defendant-

27  Debtor was found liable. The final jury instructions state as the objects of the conspiracy:

28     1.    Subjecting persons to actions of intimidation or harassment, motivated by

racial, religious, or ethnic animosity in violation of Virginia Code § 8.01-42.1 (often referred to as Virginia's hate crimes statute);

2.    Directing violence at another person, motivated by racial, religious, or ethnic animosity m violation of Virginia Code§ 8.01-42.1;

3.    Committing an unwanted touching that was neither consented to, excused, or justified (battery);

4.    Engaging in an overt act intended to inflict bodily harm, or intended to place the victim in fear or apprehension of bodily harm (assault); and

5.    Causing a reasonable apprehension that force will be used unless a person willingly submits and causing him to submit to the extent that he is denied freedom of action (false imprisonment).

Jury Instructions, Joint Exhibit 8 at 20-21, Docket 100.

When reading the completed jury verdict form, Joint Exhibit 9 at 3, Docket 100, it is clear that Defendant-Debtor was found liable for one or all of these objects. However, it is not clear in particular which of these objects Defendant-Debtor was found liable based on just the completed jury verdict form. Some of these objects of the conspiracy may rise to the level of willful and malicious injury, such as subjecting persons to actions of intimidation or harassment, motivated by racial, religious, or ethnic animosity in violation of Virginia Code § 8.01-42.l. Some of these objects of the conspiracy may not rise to the level of willful and malicious injury, such as simple assault and battery. Therefore, it is incumbent upon the court to determine for which objects of the conspiracy Defendant-Debtor in particular was found liable.

District Court Judge Moon's written Memorandum Opinion provides essential insight into which objects Defendant-Debtor was found liable in the conspiracy. These objects were necessarily litigated and determined by Judge Moon as it was stated, "Defendant Nathan Damigo argues that Plaintiffs have failed to prove his participation in an unlawful conspiracy, and so he is entitled to a directed verdict as to all the conspiracy claims." Mem. Opinion, Joint Exhibit 12 at 6, Docket 100. In denying Defendant-Debtor's Motion for a Directed Verdict, Judge Moon specifically found:

Damigo overlooks other substantial evidence in the record from which the jury could find both his participation in an unlawful conspiracy and foreseeability of the acts that injured Plaintiffs. . . Damigo testified that he considered himself to be a white supremacist and that in 2017 he was advocating for a white ethnostate. In fact, Damigo founded Identity Evropa to promote a white ethnostate. . . Damigo communicated regularly with the lead figures in the "Alt-Right" and white supremacist groups involved in planning Unite the Right. . . Damigo personally

19

approved equipment for Identity Evropa members to wear at Unite the Right—including shields, helmets, and gloves. . . Finally, Damigo argues that there was no evidence that any act of violence committed by the co-conspirators would be foreseeable by him. The Court disagrees. Such violence was certainly foreseeable. Indeed, **the communications** between the Unite the Right organizers **were replete with candid statements by Damigo** and others in Identity Evropa, as well as the other Unite the Right organizers, demonstrating **that they shared expectations of, hoped for, planned for, and purposefully sought to instigate violence at Unite the Right—including discussing whether someone could drive a car through a crowd of demonstrators that might be blocking the street.**

Mem. Opinion, Joint Exhibit 12 at 6-10, Docket 100 (internal quotations omitted) (emphasis added).

Virginia conspiracy law is clear: conspirators are held liable for the actions of the co-conspirators. Mr. Damigo has been held liable of civil conspiracy, and the actions of the co-conspirators, the objects of the conspiracy, involved willful and malicious injury, including driving a car through a crowd of demonstrators.

Therefore, damages in the amount of $1,303,284, which includes nominal and compensatory damages for violation of Counts III, IV, and V of the Second Amended Complaint, are found to be excepted from discharge pursuant to 11 U.S.C. § 536(a)(6).

**Addressing Defendant-Debtor's Argument that the Injury Was Not Committed by the Debtor**

Defendant-Debtor argues finding these damages to be nondischargeable amounts to holding Defendant-Debtor vicariously liable for the acts of others, which is not permitted under 11 U.S.C. § 523(a)(6). The court agrees that vicarious liability is not sufficient to hold Defendant-Debtor's liability excepted from discharge. *See In re Del Rosario*, 668 B.R. 618, 630 (B.A.P. 9th Cir. 2025) ("*Bartenwerfer* compels us to conclude that the presence of the phrase 'by the debtor' in § 523(a)(6) necessarily means that vicarious liability for willful and malicious injuries caused by someone else does not render such liability of the debtor nondischargeable under § 523(a)(6).").

In *In re Del Rosario*, the Bankruptcy Appellate Panel was not addressing a conspiracy liability situation based on the acts of the bankruptcy debtor, but one in which the minor child wrongdoer's parents were vicariously liable for their minor child's misconduct. The Bankruptcy Appellate Panel expressly cited to the bankruptcy decision that the parents, who did not commit any wrong acts, therefore had not committed a willful and malicious injury on the creditors. *In re Del*

1   *Rosario*, 668 B.R. at 621.

2       Defendant-Debtor also cites to *Nofziger* and *Chien* to support this argument. *Nofziger* stands

3   for the proposition that "simply stated, a co-conspirator's acts can not suffice to establish the

4   elements of Bankruptcy Code Section 523(a)(6), unless the acts were taken directly by the debtor

5   against the objecting creditor. Participation in a conspiracy is not enough to establish the intentional

6   wrong needed to make a debt nondischargeable." *Nofziger*, 361 B.R. at 243.

7       The key point raised by the Debtor is that 11 U.S.C. § 523(a)(6) states the debt is

8   nondischargeable due to the "willful and Malicious injury by the debtor." Here, Defendant-Debtor

9   argues that for the acts upon which the Amended Charlottesville Judgment is based, he did not

10  commit the acts, but others did, and his liability is only due to him being in a conspiracy for such

11  acts to occur.

12      The court begins with the plain language of the statute:

13      § 523. Exceptions to discharge

14
15      (a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this
        title does not discharge an individual debtor from any debt—
        . . .
16
17          (6) for willful and malicious injury by the debtor to another entity or to the
            property of another entity; . . . .

18  11 U.S.C. § 523(a)(6).

19      The statute first requires the debtor to be an individual. Defendant-Debtor is an individual.

20      Next, there must be a willful and malicious injury by the debtor to another. Here, the

21  "another" is the Plaintiffs and the they suffered willful and malicious injuries (as the court addresses

22  above).

23      Defendant-Debtor argues that he did not commit the actual physical act that cause the willful

24  and malicious injuries, but was found to have conspired with others for the acts that caused the

25  willful and malicious injuries to occur. Thus, Defendant-Debtor concludes that the willful and

26  malicious injury was not done "by the debtor," and that Plaintiffs are merely attempting to make him

27  vicariously liable for the conduct of others.

28      Reviewing Virginia Law concerning vicarious liability, the Personal Injury Law in Virginia

21

Treatise provides the following commentary:

§ 9.1 The Concept of Vicarious Liability.

If X injures P, X may be held liable if X was at fault. In some instances, Y may also be held liable for the injury caused by X, even though Y was not at fault. This is called "vicarious liability," and it is imposed, for policy reasons, upon those who have themselves committed no wrong.[1]

There are various reasons for holding a person liable who is personally innocent of any wrongdoing. In large part, however, vicarious liability is simply a manifestation of the law's desire to make certain that an injured victim will be compensated by increasing the number of individuals or entities from whom the plaintiff may collect damages.

The following principles about vicarious liability should be noted.

1. By definition, when Y is held vicariously liable, it means that Y is being **held liable despite the fact that he is not himself guilty of any wrongdoing**. He is being held liable for what someone else did.

2. If Y has himself committed a wrong against the plaintiff, Y may be held directly liable for that wrongdoing. That liability is not vicarious. Because that basis for liability often arises in circumstances where Y is also vicariously liable for X's wrongdoing, confusion sometimes follows. **The term "vicarious liability" means that the defendant is being held liable for another person's actions, not for the defendant's own actions.**

3. A **finding of vicarious liability depends upon the existence of some relationship between X and Y that makes it acceptable to impose liability for X's act on Y, who has personally committed no wrong**. Where X and Y are, in some form, agent and principal, the term "respondeat superior" is often used to describe the rule of vicarious liability that makes the principal liable for the act of the agent.[2]  However, "respondeat superior"—which may be loosely translated as "get the boss"—is not the only form of vicarious liability.

4. Vicarious liability is not limited to negligence actions. Although many vicarious liability situations involve liability for another's negligent conduct, one may be held liable for another's intentional wrongdoing as well.

In this chapter we will examine the various relationships that do, or do not, give rise to vicarious liability.

1
*See* Prosser & Keeton on Torts § 69. See also Dan B. Dobbs, The Law of Torts § 425. See generally, Our Lady of Peace, Inc. v. Morgan, 297 Va. 832 (2019) ("[A]n employer is liable for the tortious act of his employee if the employee was performing his employer's business and acting within the scope of his employment.").

2
The rule applies only where there exists the relation of superior to

subordinate—e.g., principal and agent, master and servant. Where the relation of superior and subordinate does not exist, there can be no application of the rule of "respondeat superior." *Bibb v. Norfolk & W. Ry.*, 87 Va. 711, 14 S.E. 163 (1891).

1 Personal Injury Law In Virginia § 9.1 (2025) (emphasis added).

As explained above, vicarious liability arises notwithstanding the fact that the person who is vicariously liable committed no wrong. It is just because of the relationship (such as the parent and minor child in *In re Del Rosario*) between the person who committed the wrongful act and the person vicariously liable. Here, as discussed above, the Defendant-Debtor affirmatively engaged in the conspiracy for the acts that caused the willful and malicious to occur.

The Personal Injury Law in the Virginia Treatise also discusses the awarding of punitive damages and how if a person is only vicariously liable then a punitive damage award is not proper.

**E. Vicarious Liability.**

Punitive damages normally may be awarded only against one who has actually participated in the offense.[41] **For this reason, they should not usually be assessed against one who is only vicariously liable**, e.g., employers,[42] partners,[43] for the acts of their agents. **But if the employer or other principal authorized or ratified the tort, such entity or person may be liable for punitive damages**. As the Supreme Court summarized the doctrine in a landmark modern decision:

A principal, … though of course liable to make compensation for the injury done by his agent, within the scope of his employment, **cannot be held for … punitive damages**, **merely** by reason of wanton, oppressive[,] or malicious intent **on the part of the agent**. Consequently, punitive damages cannot be awarded against a master or principal for the wrongful act of his servant or agent in which he did not participate, and which he did not authorize or ratify. Alternatively stated, **punitive damages may be awarded against a corporate employer only if** either (1) that employer **participated in the wrongful acts** giving rise to the punitive damages, or (2) that **employer authorized** or ratified **the wrongful acts** giving rise to the punitive damages.[44]

43
*Broudy-Kantor Co. v. Levin*, 135 Va. 283, 116 S.E. 677 (1923).

44
*Egan v. Butler*, 290 Va. 62, 772 S.E.2d 765 (2015). *See Freeman v. Sproles*, 204 Va. 353, 131 S.E.2d 410 (1963); *Tri-State Coach Corp. v. Walsh*, 188 Va. 299, 49 S.E.2d 363 (1948); *Broudy-Kantor Co. v. Levin*, 135 Va. 283, 116 S.E. 677 (1923).

1 Personal Injury Law In Virginia § 5.5 (2025)

Even for vicarious liability, punitive damages may be awarded against the person who is only vicariously liable if that person either (1) participated in the act or (2) authorized the wrongful act. Here, Defendant-Debtor engaged in the wrongful act of conspiring to have the wrongful acts causing the willful and malicious injuries to occur. Defendant-Debtor is not merely liable for some unknown actions taken by another person, but for the acts that he conspired to occur.

The court declines to follow the rule in *Nofziger* advanced by Defendant-Debtor. Under such a rule, *Nofziger* would support a finding that participation in any conspiracy never meets the requirements of nondischargeability under 11 U.S.C. § 523(a)(6). The court disagrees for two reasons: first, there is an act committed by the Defendant-Debtor, which is conspiring to commit an unlawful act, and the degree of culpability of this act of conspiring is dependent upon the object of the conspiracy.

Second, Defendant-Debtor's contention that so long as the Debtor did not commit the act himself, his planning, organizing, and efforts to make the act occur can never rise to willful and malicious conduct as required under 11 U.S.C. § 362(a)(6). The court disagrees. For example, imagine a situation where a debtor hired a third-party to inflict bodily injury on another individual (say, the debtor's wife's ex-boyfriend). The third-party, as paid and directed by the debtor, physically beats up the individual, which results in a willful and malicious injury that would be nondischargeable under 11 U.S.C. § 523(a)(6) for the third-party. Under Defendant-Debtor's contention, the debtor who developed, organized, hired, and paid the third-party to commit the willful and malicious injury would be insulated from nondischargeablilty of that debt.

Such contention is inconsistent with the plain language of 11 U.S.C. § 523(a)(6) which makes a debt arising from " willful and malicious injury by the debtor" nondischargeable. The injuries were caused by the debtor who planned, organized, and put into effect the willful and malicious injury. This is very different from vicarious liability for the acts of a third-party for which the debtor was unaware of, did not participate in, and did not organize the willful and malicious injury to occur or substantially certain to occur.

Moreover, the Amended Charlottesville Judgment awards punitive damages to Plaintiffs, which cannot be awarded only under a vicarious liability standard in Virginia. Therefore, this is not

a situation where the Defendant-Debtor was an innocent third-party and has been found liable based purely on another's conduct. As the trial court stated in its Memorandum Opinion:

> Such violence was certainly foreseeable. Indeed, the communications between the Unite the Right organizers were replete with **candid statements by Damigo** and others in Identity Evropa, as well as the other Unite the Right organizers, demonstrating **that they shared expectations of, hoped for, planned for, and purposefully sought to instigate violence at Unite the Right—including discussing whether someone could drive a car through a crowd of demonstrators that might be blocking the street.**

Joint Exhibit 12 at 6-10, Docket 100 (emphasis added).

The court finds Defendant-Debtor's liability in the Amended Charlottesville Judgment to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6), not under any vicarious liability standard, but based on Defendant-Debtor's direct actions in engaging in civil conspiracy where the object of that conspiracy involved willfully and maliciously harming others. There is other case law to support this conclusion. *See In re Shaw*, 252 B.R. 211, 214 (Bankr. M.D. Fla. 2000) ("Debtor's solicitation of arson resulted in extensive financial injury to MBIC and clearly constitutes a deliberate and malicious intentional injury toward MBIC.").

The court finds Defendant-Debtor's reliance on *In re Chien* is misplaced as *Chien* supports this court's finding. *Chien* stands for the rule that, "[i]n sum, both *Geiger* and *Su* demonstrate that the standard for meeting the willful prong of the two-part test under § 523(a)(6) is high. That is, the creditor must prove that the debtor had the subjective intent to cause harm or the subjective knowledge that harm was substantially certain to occur." *Chien*, 2008 WL 8240422 at *4. Defendant-Debtor's subjective intent has been necessarily litigated and decided as stated by Judge Moon in his Memorandum Opinion, discussed above. Indeed, the court finds Defendant-Debtor's acts of engaging in civil conspiracy led to willful and malicious injury contained the required subjective knowledge that the harm was substantially certain to occur. *See* Mem. Opinion, Joint Exhibit 12 at 10 (quoting conversations between Defendant-Debtor and other co-conspirators discussing whether things would get violent and whether it would be legal to run over protestors blocking roadways).

**Punitive Damages**

The court now considers the award of punitive damages against Defendant-Debtor in favor

1  of Plaintiffs from the Amended Charlottesville Judgment.  The punitive damages award is in the

2  amount of $58,333.33.  The relevant portion of the final jury instructions form reads:

3      Punitive damages are awarded, in the discretion of the jury, to punish a defendant for
       extreme or outrageous conduct, and to deter or prevent a defendant and others like
4      him from committing such conduct in the future.

5      You may award Plaintiffs punitive damages if you find that the acts or omissions of
       a Defendant were done maliciously or wantonly. An act or failure to act is
6      maliciously done if it is prompted by ill will or spite towards the injured person. An
       act or failure to act is wanton if done with a reckless or callous disregard for the
7      rights of the injured person. Plaintiffs have the burden of proving, by a
       preponderance of the evidence, that a Defendant acted maliciously or wantonly with
8      regard to the Plaintiffs' rights.

9      If you find by a preponderance of the evidence that a Defendant acted with malicious
       intent to violate the Plaintiffs' federal rights or unlawfully injure him, or if you find
10     that a Defendant acted with a callous or reckless disregard of the Plaintiffs' rights,
       then you may award punitive damages. An award of punitive damages, however, is
11     discretionary; that is, if you find that the legal requirements for punitive damages are
       satisfied, then you may decide to award punitive damages, or you may decide not to
12     award them.

13  Final Jury Instructions, Joint Exhibit 8 at 45, Docket 100.  The law in the Ninth Circuit is clear:

14

15     We have held that "both compensatory and punitive damages are subject to findings
       of nondischargeability pursuant to section[ ] 523(a)(6)...." *Moraes v. Adams* (*In re
       Adams*), 761 F.2d 1422, 1423, 1428 (9th Cir.1985). In *Adams*, the court rejected the
16     debtor's argument that only the punitive portion was nondischargeable under this
       section. It noted, " 'The exception is measured by the nature of the act, i.e., whether
17     it was one which caused willful and malicious injuries. *All liabilities resulting
       therefrom are nondischargeable.*' " *Id.* (quoting *Coen v. Zick*, 458 F.2d 326, 329–30
18     (9th Cir.1972)).

19  *In re Britton*, 950 F.2d 602, 606 (9th Cir. 1991).  *See also In re Klause*, 181 B.R. 487, 493 (Bankr.

20  9th Cir. 1995) ("Generally, punitive damages are nondischargeable under § 523(a)(6) if a bankruptcy

21  court finds that the nature of the underlying act (from which the punitive damages arose) involves

22  willful and malicious conduct on the part of the debtor.").

23      Punitive damages that could have been awarded on a reckless or negligent standard cannot

24  be found to be nondischargeable under 11 U.S.C. § 523(a)(6).  *Geiger*, 523 U.S. at 64.

25      The Final Jury Instructions provide that punitive damages may be awarded if a defendant

26  acted maliciously or wantonly.  Reckless is mentioned only for purposes of defining wanton in the

27  Final Jury Instructions, used to enhance "wanton" along with "callous disregard"; importantly,

28  reckless is not used as a synonym for negligence in this context, but rather used to color the

1 definition of wanton.

2    In *Geiger*, the Supreme Court considered that a reckless or negligent standard is not enough

3 to merit an exception from discharge under 11 U.S.C. § 523(a)(6). *Id.* Notably, reckless as

4 discussed in *Geiger* colors the negligence standard, separating the facts of *Geiger* from this case.

5 *Id.* at 61. The Supreme Court stated:

6    The word "willful" in (a)(6) modifies the word "injury," indicating that
     nondischargeability takes a deliberate or intentional injury, not merely a deliberate
7    or intentional act that leads to injury. Had Congress meant to exempt debts resulting
     from unintentionally inflicted injuries, it might have described instead "willful acts
8    that cause injury." Or, Congress might have selected an additional word or words,
     i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit
9    observed, the (a)(6) formulation triggers in the lawyer's mind the category
     "intentional torts," as distinguished from negligent or reckless torts. Intentional torts
10   generally require that the actor intend "the consequences of an act," not simply "the
     act itself." Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964) (emphasis
11   added).

12 *Geiger*, 532 U.S. at 61-62.

13    The important question is, therefore, not whether the punitive damages were awarded on a

14 reckless standard, but whether "wanton" is synonymous with "willful and malicious." The court

15 turns to established Virginia law for definitions of wanton. In *Thomas v. Snow*, the Supreme Curt

16 of Virginia stated:

17
18   [W]illfulness and wantonness convey the idea of purpose or design, actual or
     constructive.... [T]hey are used to signify a higher degree of neglect than gross
19   negligence. "In order that one may be held guilty of willful or wanton conduct, it
     must be shown that he was conscious of his conduct, and conscious, from his
20   knowledge of existing conditions, that injury would likely or probably result from
     his conduct, and that with reckless indifference to consequences he consciously and
21   intentionally did some wrongful act or omitted some known duty which produced the
     injurious result."

22 *Thomas v. Snow*, 174 S.E. 837, 839 (Va. 1934). Therefore, wanton conduct is something more than

23 mere negligence, it is even something more than gross negligence, and it is certainly something more

24 than recklessness. In differentiating wantonness and recklessness, the Supreme Court of Virginia

25 has stated:

26    Wanton differs from reckless both as to the actual state of mind and as to the
      degree of culpability. One who is acting recklessly is fully aware of the
27    unreasonable risk he is creating, but may be trying and hoping to avoid any
      harm. One acting wantonly may be creating no greater risk of harm, but he
28    is not trying to avoid it and is indifferent to whether harm results or not.

27

> Wanton conduct has properly been characterized as 'vicious' and rates extreme in the degree of culpability. The two are not mutually exclusive. Wanton conduct is reckless plus, so to speak.

Black's Law Dictionary 1576 (7th ed.1999) (quoting Rollin M. Perkins & Ronald N. Boyce, Criminal Law 879–80 (3d ed.1982)).

*Bazemore v. Commonwealth*, 590 S.E. 2d 602, 611 (Va. 2004). Wantonness is therefore more severe than recklessness and exists in the realm of willful and malicious.

In this case, Defendant-Debtor committed an intentional tort, civil conspiracy, intending the consequences of the act. The act was either wanton or malicious, not malicious or reckless, according to the Final Jury Instructions. Therefore, the court finds that the punitive damages are subject to the malicious standard, and could not have been subject to the reckless or negligent standard, and must also be excepted from discharge. The punitive damages award in the amount of $58,333.33 is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

**Costs and Reimbursable Expenses**

Plaintiffs have been awarded costs and Reimbursable Expenses as part of the Amended Charlottesville Judgment.

Costs

The Amended Charlottesville Judgment awards $468,216.15 in "costs" to all Plaintiffs. These costs are also excepted from discharge because the costs awarded are related to the underlying willful and malicious conduct.

Reimbursable Expenses

The second costs are identified as "Reimbursable Expenses" in the amount of $1,266,420.84. Plaintiffs argue these are not costs associated with the Amended Charlottesville Judgment, but rather are post-petition debts not subject to discharge. *See* Plaintiffs' Mem. In Support of Mot. For Summ. J. at 37, Docket 97. In support of this argument, Plaintiffs state:

> The Reimbursable Expenses all arose and were incurred beginning in March 2019, approximately two months after Damigo's January 2019 bankruptcy filing, with all invoices for the Reimbursable Expenses issued after the Petition Date, beginning in March 2019. Further, had the Plaintiffs not advanced those expenses, Damigo and his co-defendants would have incurred and had to pay those expenses directly, all after the Petition Date.

28

1    *Id.* at 37:20-24.

2    Defendant-Debtor argues the Reimbursable Expenses are a pre-petition claim and are subject

3    to discharge. Defendant-Debtor states:

4    > Undisputed facts and relevant chronology in *Sines v. Kessler* show that plaintiffs'
   > Reimbursable Expenses claim, like the attorney's fees claim at issue in *Castellino*
5    > *Villa*, was a contingent and unliquidated claim that was filed pre-petition and
   > therefore was discharged by Mr. Damigo's January 2, 2019 bankruptcy petition. The
6    > Magistrate Judge summarized these basic facts and chronology in his March 7, 2024,
   > discussed and quoted from earlier in this memorandum. In this March 7, 2024 Order,
7    > the Magistrate Judge affirmed several times that the plaintiff's claim for
   > Reimbursable Expenses arose "under the terms of the ESI Stipulation & Order" that
8    > he had "signed and entered on November 19, 2018," approximately six weeks before
   > Mr. Damigo filed his bankruptcy petition on January 2, 2019. The November 2018
9    > Stipulation and Order thus created the contingent and unliquidated liability that the
   > invoice later submitted by the third-party vendor in March of 2019 rendered
10   > noncontingent and liquidated, circumstances directly analogous to the attorney's fees
   > agreement in *Castellino Villa* that created a contingent and unliquidated liability
11   > made noncontingent and liquidated when attorney's fees were later incurred.
   > Plaintiffs' claim for Reimbursable Expenses, accordingly, arose pre-petition and was
12   > discharged by Mr. Damigo's bankruptcy filing in January 2019.

13   Defendant-Debtor's Mem. In Support of Mot. For Summ. J. 27:24-28:13, Docket 91. Defendant-

14   Debtor relies on the broad definition of claim as defined in 11 U.S.C. § 101(5) and the Ninth

15   Circuit's test for pre-petition claim as explained in *In re Castellino Villa A.K.F. LLC*, 836 F.3d 1028

16   (9th Cir. 2016).

17   The Reimbursable Expenses are the result of costs associated with hiring a third-party

18   discovery vendor to collect and produce electronically stored information ("ESI") from Electronic

19   Devices and Social Media Accounts belonging to certain Defendants or their agents. Order, Joint

20   Exhibit 14 at 1, Docket 100. The Reimbursable Expenses award was requested specifically under

21   the parties' Stipulation & Order for the Imaging, Preservation, and Production of Documents ("ESI

22   Stip. & Order"). *Id.*; Joint Exhibit 6, Docket 100. The critical language of the ESI Stip & Order

23   states:

24

25   > Within 21 days of the entry of this Stipulation and Order, the Parties shall engage,
   > at Plaintiffs' expense, a Third Party Discovery Vendor to conduct the collection and
26   > production of ESI from Defendants' Electronic Devices and Social Media Accounts
   > required by this Stipulation and Order. Pursuant to the Court's November 13, 2018
27   > Order, ECF No. 379, such engagement shall be without prejudice to Plaintiffs' ability
   > to seek to recover from Defendants expenses arising from this engagement at a later
28   > date. This Stipulation and Order does not obligate Defendants to pay any fees or
   > costs incurred by the Third Party Discovery Vendor at this time, and does not

29

prejudice Defendants' rights to oppose any request made by Plaintiffs to recover those expenses, any such obligation to be determined at a later date.

ESI Stip. & Order, Joint Exhibit 6 at 7-8, Docket 100. The ESI Stip. & Order was entered on November 19, 2018. Defendant-Debtor filed his case on January 2, 2019. Importantly, the ESI Stip. & Order did not obligate Defendant-Debtor to pay any fees or costs, and it did not prejudice Defendant-Debtor from opposing any request made by Plaintiffs to recover those expenses. All invoices related to the ESI Stip. & Order are for tasks performed entirely post-petition, from March 1, 2019, through October 31, 2021. Order, Joint Exhibit 14 at 3, Docket 100.

Whether the Reimbursable Expenses
are a Pre-Petition Claim

The Code states:

(5) The term "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). The Ninth Circuit has defined claim, stating:

A claim is "contingent" when "the debtor will be called upon to pay [it] only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor." *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987) (internal quotation marks omitted). A claim is "unliquidated" when it is not "subject to ready determination and precision in computation of the amount due." *Id.* (internal quotation marks omitted). "This broadest possible definition of 'claim' is designed to ensure that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." *In re Jensen*, 995 F.2d 925, 929 (9th Cir. 1993) (internal quotation marks omitted). "The breadth of the definition of 'claim' is critical in effectuating the bankruptcy code's policy of giving the debtor a 'fresh start.' " *Id.*

In *In re Castellino Villas, A. K. F. LLC*, 836 F.3d 1028, 1033 (9th Cir. 2016). In *Castellino Villas*, the Ninth Circuit considered whether a creditor may have a claim against a debtor for attorneys' fees, even though the creditor has not yet incurred those fees. *Id.* at 1034. The Ninth Circuit stated:

"[F]ederal law determines when a claim arises under the Bankruptcy Code." *In re*

*SNTL Corp.*, 571 F.3d 826, 839 (9th Cir. 2009). We have recognized that under some circumstances, a creditor may have a claim against a debtor for attorneys' fees, even though the creditor has not yet incurred those fees. For instance, where the debtor and creditor have entered into a contract that includes an attorneys' fees agreement, the creditor may be deemed to have a contingent claim for payment of attorneys' fees even before any fees are incurred. *See id.* at 843 & n.18 ("[W]hen a creditor's right to payment for fees exists prepetition [in a Chapter 7 case], the right to payment constitutes a 'claim,' within the meaning of § 101(5)(A), albeit an unliquidated, unmatured claim." (quoting *In re New Power Co.*, 313 B.R. 496, 508 (N.D. Ga. 2004))). Such a contingent claim would then include attorneys' fees incurred during and after the bankruptcy case. "In general, if the creditor incurs the attorneys' fees postpetition [in a Chapter 7 case] in connection with exercising or protecting a prepetition claim that included a right to recover attorneys' fees, the fees will be prepetition in nature, constituting a contingent prepetition obligation that became fixed postpetition when the fees were incurred." *Id.* at 844 (quoting 5 Collier on Bankruptcy § 553.03[1][i] (15th ed. Updated 2007)). Said otherwise, when the creditor had a prepetition contingent claim for attorneys' fees, even attorneys' fees incurred after that date may be discharged in bankruptcy.

*Castellino Villas*, 863 F.3d at 1034. The Ninth Circuit employs the "fair contemplation" test in determining whether a creditor's claim arose prepetition. *Id.* Under this test, "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law. . . Accordingly, if a creditor and debtor are engaged in prepetition litigation pursuant to a contract that includes an attorneys' fees provision, and the creditor 'can fairly or reasonably contemplate' that it will have a claim for attorneys' fees if an 'extrinsic event' occurs (that is, if it prevails in the litigation), then the creditor's claim for attorneys' fees will be discharged in the debtor's bankruptcy even if the creditor incurs attorneys' fees after the debtor was discharged." *Id.* (internal citations omitted).

The ESI Stip & Order was entered into to address the ongoing expenses of discovery in the Charlottesville Action. These expenses as part of the Charlottesville Action were incurred as potentially recoverable expenses by Plaintiffs if they prevailed. As with any party to an action, they are not responsible for paying discovery expenses of an opposing party until judgment is entered and costs allowed.

The ESI Stip & Order stated the basic grounds for establishing a central, independently maintained electronic storage data base for discovery. Joint Exhibit 6; Dckt. 100. This is not a contract creating an obligation of the Defendant-Debtor, but a Stipulation and Order whereby an agreed storage service is to be used, with Plaintiffs have the right to seek recovery as otherwise

permitted in a action before the District Court.

Indeed, the definition of claim in the Ninth Circuit is broad under the fair contemplation test. The critical language in the ESI Stip. & Order did not create an obligation at the time it was entered; however, the ESI Stip. & Order can surely be fairly contemplated to lead to a claim eventually, contingent upon Plaintiffs incurring the expenses and prevailing under applicable law. The language of the ESI Stip. & Order specifically provided defendants were not obligated to pay fees and costs "at th[at] time," which necessarily predicates there may be a time when defendants were obligated to pay fees and costs. Such an interpretation is required by the fair contemplation test. It is fair to contemplate that the ESI Stip. & Order would lead to a liquidated claim, regardless of when the obligation was actually incurred, contingent upon certain events occurring post-petition.

The Amended Charlottesville Judgment expressly provides for the award of $1,266,420.84 as Reimbursable Expenses in the Charlottesville Action. Amd Judgment, p. 3,Joint Exhibit 17; Dckt. 100 at 307. The Amended Charlottesville Judgment awards the Reimbursable Expenses to Plaintiffs as part of the Amended Charlottesville Judgment, citing to the ESI Stipulation & Order and Federal Rule of Civil Procedure 58(a)(3). *Id*. Federal Rule of Civil Procedure 58(a)(3), which provides that a request for attorney's fees pursuant to Federal Rule of Civil Procedure 54 may be requested by and allowed as part of the judgment through a separate order. Federal Rule of Civil Procedure 54(d)(1) states that costs (*see* 28 U.S.C. § 1920, specifying what costs may be allowed) should be allowed for the prevailing party in the litigation and attorney's fees Federal Rule of Civil Procedure 54(d)(2) states that attorney's fees and related nontaxable expenses may also be requested to be included in the judgment.

As would be attorney's fees, these related nontaxable  Reimbursable Expenses are part of Plaintiffs' contingent claim under the principles in *In re Castellino Villas, A. K. F. LLC*.

A point raised at oral argument by counsel for Defendant-Debtor was that Plaintiffs did not assert that these costs were part of the Amended Charlottesville Judgment for the pre-petition nondischargeable debts, but really just post-petition debts that could not be discharged. Defendant-Debtor asserted that they should be "stuck" (in the court's words) with that contention and the court should not be advancing a basis of the Reimbursable Expenses being part of a nondischargeable pre-

petition debt.

The court is tasked with reading the Amended Charlottesville Judgment and then following the Judgement as written. On the face of the Amended Charlottesville Judgment it states that the Reimbursable Expenses are allowed as provided in Federal Rule of Civil Procedure 58(a)(3), as the court discusses above. This court is merely reading and applying the plain language of the Amended Charlottesville Judgment and the Federal Rules of Civil Procedure cited therein. This court has read the Amended Charlottesville Judgment and applied the applicable Laws and Rules in determining the debt that is nondischarable.

Nondischargeability of the Costs
and Reimbursable Expenses

The Ninth Circuit has held "attorneys fees and costs awarded to a judgment creditor in relation to a debtor's underlying willful and malicious contemptuous conduct, even when no compensatory judgment debt exists, constitute a nondischargeable debt under section 523(a)(6)." *In re Suarez*, 400 B.R. 732, 740 (B.A.P. 9th Cir. 2009). *See also Cohen v. de la Cruz*, 523 U.S. 218-19 (1998) (holding costs related to a judgment obtained by fraud are also excepted from discharge under 11 U.S.C. § 523(a)(2), in part relying on the phrase "any debt" that begins the 11 U.S.C. § 523(a) exceptions).

Therefore, Defendant-Debtor's liability of $468,216.15 in costs and $1,266,420.84 are also excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

**Granting of Summary Judgment
on Count I for Plaintiffs**

Summary Judgment is granted Plaintiffs for Count I of the Amended Complaint and the debts owed pursuant to the Amended Charlottesville Judgment are nondischarable pursuant to 11 U.S.C. § 523(a)(6).

Defendant-Debtor's counter Summary Judgment Motion as to Count I is denied.

## COUNT II

**11 U.S.C. § 727(b)**

In Plaintiffs' Amended Complaint they seek in the alternative a determination that the

Reimbursable Expenses portion of the Amended Charlottesville Judgment were not discharged pursuant to 11 U.S.C. § 727(b). Am. Complaint 9:13, Docket 82. As addressed above, based upon the plain language of the Amended Charlottesville Judgment and established Ninth Circuit Court of Appeals law, the Reimbursable Expenses were allowed as part of the pre-petition obligation. As such, they are nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

Being part of the pre-petition claim, they are not "post-petition debts" as provided for in 11 U.S.C. § 506(b).

Plaintiffs' Motion for Summary Judgment is denied as to Count II.

Defendant-Debtor requests in his Motion for Summary Judgment and Memorandum of Points and Authorities (Dckts. 89, 91) that summary judgment be granted in favor of Defendant-Debtor as to Count II, the Reimbursable Expenses being part of Plaintiffs' pre-petition claim and are subject to discharge. The court grants Defendant-Debtor's Motion for Summary Judgment as to Count II.

Notwithstanding granting Defendant-Debtor summary judgment as to Count II, the Amended Charlottesville Judgment, which includes the Reimbursable Expenses, has been determined nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

**CONCLUSION
AND ENTRY OF JUDGMENT**

The Plaintiffs' Motion for Summary Judgment is granted as to Count I and the court shall enter judgment that the Amended Charlottesville Judgment and the monetary obligation owing in the amount of $3,096,254.32, plus additional post judgment-interest and costs, fees and expenses allowable thereunder, against Defendant-Debtor Mr. Damigo is nondischargeable as provided in 11 U.S.C. § 523(a)(6). Defendant-Debtor Mr. Damigo's counter Motion for Summary Judgment as to Count I is denied.

Defendant-Debtor's Motion for Summary Judgment is granted as to Count II, and the court denies Plaintiffs' relief requested in Count II. Plaintiffs' Motion for Summary Judgment as to Count II is denied.

The court shall issue an order granting Plaintiff's Motion for Summary Judgment as to

Count I and denying it as to Count II, and a separate order denying Defendant-Debtor's counter

Motion for Summary Judgment as to Count I and granting the Motion as to Count II.

Attorney's fees, costs, and expenses, if any, shall be requested by post-judgment motions.

**Dated:** August 29, 2025

**By the Court**

Ronald H. Sargis, Judge
United States Bankruptcy Court

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| Debtor(s) / Defendant-Debtor(s) | Attorney(s) for the Debtor(s) / Defendant-Debtor(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney(s) for the Trustee** (if any) | Robert L. Eisenbach, Esq.<br>3 Embarcadero Center, 20th Floor<br>San Francisco, CA 94111 |
| Caitlin B. Munley, Esq.<br>1299 Pennsylvania Avenue, NW, Ste. 700<br>Washington DC 20004 | |