| | |
|---|---|
| Glen K. Allen, admitted pro hac vice
5423 Springlake Way
Baltimore, MD 21212
Tel: 410-323-8665
glenallenlaw@protonmail.com

Attorney for Debtor and Defendant
Nathan Damigo | |

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>**NATHAN BENJAMIN DAMIGO,**<br><br>**Debtor**<br><br>Chapter Number: 7<br><br>_____<br><br>**ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, TYLER MAGILL, APRIL MUNIZ, HANNAH PEARCE, MARCUS MARTIN, NATALIE ROMERO, JOHN DOE, AND CHELSEA ALVARADO**<br><br>**Plaintiffs**<br><br>v.<br><br>**NATHAN BENJAMIN DAMIGO**<br><br>**Defendant** | Case No. 19-90003-E-7<br>Hon. Judge Klein<br><br>**DEBTOR NATHAN DAMIGO'S MOTION TO STAY ENFORCEMENT OF JUDGMENT**<br><br>Adv. Pro. No. 19-09006-E<br><br>Hearing Date:<br>Hearing Time:<br><br>Action Filed:<br>Trial Date: |

Debtor and defendant Nathan Damigo, in accordance with Federal Rule of Bankruptcy Procedure 8007, moves to stay enforcement of the judgment entered by

DEBTOR'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

this Court on August 29, 2025. In support of his motion, Mr. Damigo states as follows.

## THE FOUR FACTORS

The United States Supreme Court in *Nken v. Holder*, 556 U.S. 418 (2009), set forth the four basic factors to be weighed by a court in determining whether to stay a judgment: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Id.* at 425-26; *see also Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) (applying *Nken* factors). These factors weigh decidedly in favor of a stay in this case.

**FIRST FACTOR: STRONG SHOWING OF SUCCESS ON THE MERITS**

In *Lair v. Bullock*, the Ninth Circuit, citing to *Leiva-Perez v. Holder*, 640 F.3d 962, 966, 968 (9th Cir. 2011), stated that to satisfy the first factor "a petitioner must show that there is a 'substantial case for relief on the merits.' . . . The standard does not require the petitioners to show that 'it is more likely than not that they will win on the merits.'" Mr. Damigo easily satisfies this "substantial case for relief on the merits" standard.

The core issues in the above-captioned adversary proceeding involved the application of collateral estoppel principles to the judgment entered against Mr. Damigo and other defendants by the United States District Court for the Western

DEBTOR'S MOTION FOR A STAY OF JUDGMENT

District of Virginia in *Sines, et al. v. Kessler, et al.*, Case No. 3:17-cv-00072-NKM, affirmed by the Fourth Circuit Court of Appeals in Case No. 23-1119 on July 1, 2024. The District Court held Mr. Damigo and numerous other defendants jointly and severally liable for $1,303,284 in nominal and compensatory damages, $468,216.15 in costs, and $1,266,420.84 in reimbursable expenses. Mr. Damigo was also held liable pro rata for $58,333.33 in punitive damages. *See* Joint Memorandum Opinion and Decision on Counter Motions for Summary Judgment, ECF Doc. 144 (August 29, 2025). Mr. Damigo filed a petition for discharge of this judgment in January 2019, while *the Sines v. Kessler* case was pending.

The *Sines v. Kessler* judgment thus comprised three separate components: 1) nominal and compensatory damages; 2) punitive damages; and 3) reimbursable expenses. On August 29, 2025, this Court entered judgment against Mr. Damigo as to each component, finding the *Sines v. Kessler* judgment nondischargeable under the 11 U.S.C. § 523(a)(6) exception to dischargeability for "willful and malicious injuries by the debtor to another entity." *See* Judgment, ECF Doc. 150 (August 29, 2025). For the reasons below, however, the Court erred as to each component. Each component requires separate analysis.

**Nominal and Compensatory Damages Component.** As described in detail in Mr. Damigo's memorandum in support of his motion for summary judgment in this adversary proceeding, ECF 91, the plaintiffs in the *Sines v. Kessler* case in their Second Amended Complaint ("SAC"), filed on September 17, 2019, alleged seven causes of action by different subsets of 10 plaintiffs against 24 defendants, including

Mr. Damigo. The SAC purported to describe the tumultuous events at the Unite the Right Rally ("UTR") in Charlottesville, Virginia, in August 2017. The seven causes of action alleged in plaintiffs' SAC were the following:

1. Civil Rights Conspiracy under 42 U.S.C. 1985(3) – all 10 plaintiffs against all 24 defendants, including Mr. Damigo.
2. 42 U.S.C. 1986 – all 10 plaintiffs against all 24 defendants, including Mr. Damigo.
3. Civil Conspiracy -- all 10 plaintiffs against all 24 defendants, including Mr. Damigo,
4. Negligence Per Se – seven plaintiffs against one defendant, i.e., Mr. James Fields. On October 22, 2021, the plaintiffs voluntarily dismissed this count.
5. Virginia Code 8:0142.1 – eight plaintiffs against seven defendants, not including Mr. Damigo.
6. Assault and Battery – seven plaintiffs against one defendant, i.e., Mr. Fields.
7. Intentional Infliction of Emotional Distress -- seven plaintiffs against one defendant, i.e., Mr. Fields.

The jury deadlocked as to Counts I and II. As to Count III, the Civil Conspiracy claim, the jury found in favor of the plaintiffs and against Mr. Damigo and numerous other defendants but, as to nominal and compensatory damages, awarded only $1.00 in nominal damages. (The jury awarded $500,000 in punitive damages against all the Count III defendants, including Mr. Damigo). As to Counts IV, V, and VI, in which Mr. Damigo was not a defendant, the jury found for the plaintiffs. As to the fourth claim, for violation of Virginia Code 8.01-42.1, the jury awarded compensatory damages of $250,000 each in favor of two plaintiffs against five defendants (not including Mr. Damigo) for a total of $500,000. As to the fifth claim, for assault and battery by six plaintiffs against only Defendant James Fields, the jury found compensatory damages in various amounts totaling $803,277 in favor of five of the plaintiffs. As to the sixth claim, for intentional infliction of emotional distress by the

DEBTOR'S MOTION FOR A STAY OF JUDGMENT

same six plaintiffs against only Defendant Fields, the jury found compensatory damages in various amounts totaling $701,459 in favor of all six plaintiffs.

In summary, the only nominal or compensatory damages awarded against Mr. Damigo on a count in which he was named as a defendant was Count III; and that award was for only $1.00 in nominal damages. The trial court in *Sines v. Kessler*, based on the Count III civil conspiracy claim, nonetheless held Mr. Damigo jointly and severally liable for the compensatory damages awarded against other defendants on Counts IV and V. Mr. Damigo argued in his motion for summary judgment in this adversary proceeding that the court in *Sines v. Kessler* thus effectively held Mr. Damigo vicariously liable for the actions of others and that such vicarious liability was not a proper predicate for the § 523(a)(6) exception to dischargeability that the plaintiffs invoked in their complaint and amended complaint in this adversary proceeding. This Court in its August 29, 2025 opinion and judgment rejected this argument and upheld the plaintiffs' invocation of the § 523(a)(6) exception. Mr. Damigo will demonstrate on appeal that this holding was erroneous for the following reasons.

**First,** the Court's holding was inconsistent with the plain text of the § 523(a)(6) exception, which explicitly requires that the "willful and malicious injury" be "by the debtor to another entity." As numerous courts have held, vicarious liability cannot fairly be equated to "injury by the debtor." *In re Eggers*, 51 B.R. 452 (Bankr. E.D. Tenn. 1985), is an important precedent on this point. In that adversary proceeding,

arising as the result of an automobile accident, the plaintiff sought a § 523(a)(6) exception against both a minor and his mother. In rejecting the exception, the court emphasized the plain meaning and legislative history of § 523(a)(6):

> Section 523(a)(6) excepts from discharge a willful and malicious injury *by the debtor* to another entity. The legislative history accompanying Section 523(a)(6) indicates that a debt is nondischargeable only where injury has resulted from some deliberate or intentional act *of the debtor:*
>> Paragraph (6) excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell*, 193 U.S. 473 (1902), held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled. [footnote omitted] H.R.Rep. No. 595, 95th Cong., 1st Sess. 365, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6320–21.
>
> Unlike the present statute, under the former Bankruptcy Act, § 17(a)(8) contained no specific designation as to whose conduct was involved. The addition to the present Code of the phrase "by the debtor" clearly indicates rejection of an imputed liability theory.

*Eggers*, 51 B.R. at 453 (emphasis in original). *Eggers* has spawned a great many cases holding that § 523(a)(6) cannot be based on imputed or vicarious liability, i.e., the conduct of persons other than the debtor. *See, e.g., In re Anthony*, 2020 WL 94572 (D. M.D. Fl. Jan. 8, 2020) at * 9 ("Courts have relied on the ['by the debtor'] language to find that vicarious liability does not satisfy the 'willful' requirement of Section 523(a)(6)"); *In re Nolan*, 220 B.R. 727, 732 (D.D.C. 1998) ("The addition of the phrase 'by the debtor' indicates a rejection of an imputed or vicarious liability theory"); *Bairstow v. Sullivan (In re Sullivan)*, 198 B.R. 417, 423 (Bankr. D. Mass.

DEBTOR'S MOTION FOR A STAY OF JUDGMENT

1996) ("[A] judgment based on actions for which the debtor may be legally responsible but which were not performed by the debtor is outside the scope of both the language and the intent of [§ 523(a)(6)]"); *In re Hazen*, 2018 WL 4718976 (Bankr. E.D. N.Y. Sep. 28, 2018) at * 8 ("The plain language [of § 523(a)(6)] provides that the injury must be 'by the debtor' and, as such, leaves no room for the imputations of another's acts").

**Second**, the Court's holding is inconsistent with a majority of other courts' decisions on the vicarious liability issue. *Kalmanson v. Adams (In re Nofziger)*, 361 B.R. 236 (Bankr. M.D. Fla. 2006), is an apt starting point.

In *Nofziger,* a creditor brought an adversary proceeding against Chapter 7 debtors who had allegedly participated in a civil conspiracy with the creditor's ex-wife and ex-wife's divorce attorney. The creditor sought, *inter alia*, a determination of the nondischargeability of the debt under § 523(a)(6). The debtors moved to dismiss for failure to state a claim. In granting the motion, the court stated:

> The interesting issues raised by the defendants' motions to dismiss are whether a conspiracy claim can substitute for the intentional tort typically required to make a debt nondischargeable under Section 523(a)(6). The Court holds it is not. The established law is clear that a debtor must commit some type of intentional tort directed against the claimant or his property in order for a court to find that the resulting damages are nondischargeable. [Citing many cases] . . . Each of these examples illustrates the basic principle—that, in order to find a debt nondischargeable under § 523(a)(6), the debtor directly must commit some type of malicious, intentional tort which the debtor knew would cause harm to the creditor. A conspiracy, *i.e.*, an agreement, to commit a tort or other wrong does not qualify. Actions taken against parties other than the

DEBTOR'S MOTION FOR A STAY OF JUDGMENT

claimant do not qualify. Nor does action taken by someone other than the debtor qualify . . . Simply stated, a co-conspirator's acts cannot suffice to establish the elements of Bankruptcy Code Section 523(a)(6), unless the acts were taken directly by the debtor against the objecting creditor. Participation in a conspiracy is not enough to establish the intentional wrong needed to make a debt nondischargeable.

Bankruptcy is a uniquely personal act. The debtor's right to receive a discharge is a personal right, which should not be denied lightly. "Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor." *In re Maxwell*, 334 B.R. 736, 741 (Bankr. M.D. Fla. 2005) (citing *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986) . . . . "Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system." *Maxwell*, 334 B.R. at 741 . . . Therefore, in order to establish that a particular debt is nondischargeable, at a minimum, the creditor must establish that the debtor, not someone else in a chain of co-conspirators, took the offensive act and that the act was directed at the creditor, not someone else. See *In re Eggers*, 51 B.R. 452, 453 (Bankr. Tenn. 1985) ("The legislative history accompanying § 523(a)(6) indicates that a debt is nondischargeable only where injury has resulted from some deliberate or intentional act of the debtor . . .")

*Nofziger*, 361 B.R. at 243-44.

*In re Chien*, 2008 WL 84444802 (9th Cir. Bankr. Panel, Feb. 7, 2008), is another relevant precedent -- indeed, a particularly important one given that it was issued by the Ninth Circuit Bankruptcy Panel, albeit as an unpublished decision. In that case the debtor, Luc, argued that the § 523(a)(6) exception could be based on the debtor's liability under a civil conspiracy claim. The Panel decisively rejected this argument:

The plain language of § 523(a)(6) excepts from discharge a willful and malicious injury *by the debtor* to another entity (emphasis added). Further, the standards set forth in [*Kawaauhau v. Geiger*, 523 U.S. 57 (1998)] and [*Carillo v. Su (In re Su)*, 290 F.3d 1190 (9th Cir. 2002)] compel a more measured approach. We harken back to *Geiger* where the Supreme Court, in the simplest

DEBTOR'S MOTION FOR A STAY OF JUDGMENT

possible terms, said a debtor must intend to injure the creditor before a claim is excepted from discharge based on malice. *Geiger,* 523 U.S. at 61-62. The Ninth Circuit in *Su* has refined the willful prong to require the debtor to subjectively intend to inflict injury or to believe that injury is substantially certain to occur as a result of *his* conduct. *Su,* 290 F.3d at 1144 (emphasis added).

... Regarding Luc's conspiracy theory, the recent case of *Kalmanson v. Adams (In re Nofziger)*, 361 B.R. 236 (Bankr. M.D. Fla. 2006), while not binding, is instructive. In *Nofziger,* the court held that a conspiracy claim would not substitute for the intentional tort typically required to make a debt nondischargeable under § 523(a)(6). The court's decision was based on the rationale that a co-conspirator's acts are not the debtor's acts which must be taken directly against the objecting creditor as required by § 523(a)(6). *Id.* The court observed that "action taken by someone other than the debtor" does not qualify. *Id.* We agree with *Nofziger,* consistent with the standards set forth in *Geiger* and *Su,* that Luc's conspiracy theory is inapplicable in the context of § 523(a)(6).

*In re Chien*, 2008 WL 84444802 at * 7.

As the court in *In re Bruce,* 593 B.R. 765, 777 (Bankr. S.D. Ohio 2018) summarized:

While the Magistrate may not have been required to pinpoint whose knowledge and misconduct formed the basis for the punitive damages award under state law principles, such specificity is required when determining nondischargeability pursuant to Section 523(a)(6). Under this provision, the willful and malicious injury has to be an injury "*by the debtor* to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6) (emphasis added); *Hamilton v. Nolan (In re Nolan,)* 220 B.R. 727, 732 (Bankr. D.C. 1998) (noting that the plain meaning of this language requires that the debtor be the one whose willful and malicious conduct caused the injury). Consequently, the willful and malicious conduct of others, even if the debtor may be legally responsible for that conduct under state law, cannot be imputed to the debtor for purposes of Section 523)a)(6). *First Citizen's Nat'l Bank v. Murray (In re Murray),* 2013

DEBTOR'S MOTION FOR A STAY OF JUDGMENT

Bankr. LEXIS 5737, at *11-22 (Bankr. W.D. Tenn., Aug. 20, 2013) ("The majority of the time, courts have universally held that a person's willful and malicious actions cannot be imputed to another person for the purpose of holding that debt nondischargeable under 523(a)(6)" (internal quotation marks and citation omitted); *Nolan*, 220 B.R. at 732 ("This court agrees with the majority who have ruled that nondischargeability of a debt under § 523(a)(6) cannot be grounded on the imputation to the debtor of acts of another."); *Yelton v. Eggers (in re Eggers)*, 51 B.R. 452, 453 (Bankr. E.D. Tenn. 1985).

**Third,** the Court's holding was inconsistent with the manifest import of the plaintiffs' allegations of damages in their SAC in the *Sines v. Kessler* case, which attributed their damages primarily to the actions of Mr. James Fields. Even in accordance with plaintiffs' allegations, Mr. Damigo had no connection with Mr. Fields other than that Mr. Fields tweeted a rather innocuous statement to Mr. Damigo that plaintiffs do not and cannot assert Mr. Damigo ever responded to or even saw.

In summary, Mr. Damigo has arguments on appeal that easily meet the required "substantial case for relief on the merits" standard.

**Punitive Damages Component.** The Court's error with regard to the punitive damages component arises from the Court's failure properly to take into account the Supreme Court's decision in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). In *Geiger*, the Court held that a finding of recklessness was insufficient to satisfy the § 523(a)(6) exception:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described

instead "willful acts that cause injury" . . . . A construction so broad would be incompatible with the "well-known" guide that exceptions to discharge "should be confined to those plainly expressed." *Gleason v. Thaw*, 236 U.S. 558, 562 (1915) . . . We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6).

523 U.S. at 61, 62, 64.

In accordance with *Geiger*, if a punitive damages award was or could have been awarded based on a recklessness standard, the § 523(a)(6) exception does not apply. In *In re Duncan*, 448 F.3d 725 (4th Cir. 2006), the Fourth Circuit addressed the issue in a case involving, as this case does, collateral estoppel under Virginia law. The court held:

> The state court judgment for punitive damages likewise does not support application of collateral estoppel because the record does not establish that it was based on a finding identical to the controlling issue under § 523(a)(6) . . . The state court jury entered a punitive damages award against Jacqueline Duncan based on the following instruction:
>
>> If you find your verdict for the Plaintiff and if you believe by the greater weight of the evidence that the Defendant's conduct was a willful one, or was so reckless as to evince a conscious disregard for the safety of [Meigan] you may also award punitive damages to the Plaintiff.
>
> J.A. 285G. Under this instruction, the jury could have found that Jacqueline Duncan was liable for either willful conduct or reckless conduct. The record contains no indication of which of these two standards the jury employed.
>
> It is this gap in the record that renders summary judgment based on collateral estoppel inappropriate. One of the two standards in the punitive damages instruction—recklessness—is satisfied by conduct that is inadequate for purposes of § 523(a)(6). *Geiger*, 523 U.S. at 64 . . . ( "debts arising from

DEBTOR'S MOTION FOR A STAY OF JUDGMENT

recklessly ... inflicted injuries do not fall within the compass of § 523(a)(6)"). Even if we were to assume that the willful conduct portion of the punitive damages instruction is synonymous with a "willful and malicious injury" under § 523(a)(6), nothing before us suggests that the jury made its determination on that basis. We cannot say that the punitive damages award necessarily involved a finding identical to the § 523(a)(6) inquiry since the jury could have based its award on a finding of recklessness. Both because such a possibility exists and because Virginia law requires an identity of issues for collateral estoppel to apply, we cannot conclude that the question of whether Meigan's death was a "willful and malicious injury" was litigated in and necessary to the award of punitive damages. Accordingly, application of collateral estoppel based on the punitive damages award is inappropriate here.

*In re Duncan*, 448 F.3d at 730. As in *Duncan*, in *Sines v. Kessler* also the punitive damages jury instruction (Number 36) permitted the jury to award punitive damages based on recklessness: "You may award Plaintiffs punitive damages if you find that the acts or omissions of a Defendant were done maliciously or wantonly. An act or failure to act is maliciously done if it is prompted by ill will or spite towards the injured person. An act or failure to act is wanton if done with a reckless or callous disregard for the rights of the injured person." Accordingly, under *Geiger*, *Duncan*, and Virginia principles of collateral estoppel, the § 523(a)(6) exception is not available as to the punitive damages award against Mr. Damigo.

This Court in its August 29, 2025 decision failed even to address the Fourth Circuit's *In re Duncan* decision, failed to properly focus on the exact language in the *Sines v. Kessler* punitive damages jury instruction, and accordingly reached an erroneous result.

DEBTOR'S MOTION FOR A STAY OF JUDGMENT

**Reimbursable Expenses Component.** The Court's holding with respect to the Reimbursable Expenses component was both procedurally improper and substantively erroneous.

In ECF 1656 on "Reimbursable Expenses" in the *Sines v. Kessler* case, the Magistrate Judge explained, at pages 1-2:

> Separately, Plaintiffs seek $1,266,420.84 in costs associated with hiring a third-party discovery vendor to collect and produce electronically stored information ("ESI") from Electronic Devices and Social Media Accounts belonging to certain Defendants or their agents . . . They make this request specifically under the parties' Stipulation & Order for the Imaging, Preservation, and Production of Documents, ECF No. 383 ("ESI Stip. & Order"), and not under Rule 54(d)(1) of the Federal Rules of Civil Procedure.). . . . I signed and entered the ESI Stipulation & Order on November 19, 2018 . . .

The Magistrate Judge held that "Plaintiffs are entitled to recover $1,266,420.84 in reimbursable expenses under the terms of the ESI Stipulation & Order" and held Mr. Damigo and the other defendants jointly and severally liable for this amount. ECF 1656 at 3.

Plaintiffs contended in their motion for summary judgment that this Reimbursable Expenses claim arose post-petition, i.e., after Mr. Damigo filed his bankruptcy petition in January 2019, because the initial invoices from the third-party vendor were not sent out until March 2019. Mr. Damigo argued to the contrary based on the broad definition of "claim" under the bankruptcy rules, which includes unliquidated and contingent claims.

Anomalously, the Court agreed with Mr. Damigo's argument that the claim arose


pre-petition, but nonetheless found for the plaintiffs on the ground that the Reimbursable Expenses were analogous to costs. The plaintiffs themselves had never made this argument and Mr. Damigo had less than 24 hours, from the issuance of the Court's preliminary opinion to the time for the hearing, to digest and research this novel and completely new argument. Moreover, the Court's analogy of the Reimbursable Expenses to costs was not supported by any apposite case law in the Court's opinion, and is flawed. Unlike costs, the Reimbursable Expenses involved a contractual arrangement, and there is no authority whatever that contract matters can be subject to the § 523(a)(6) exception for "willful and malicious injury by the debtor."

In summary, the Court's reasoning was flawed as to all three components of the *Sines v. Kessler* judgment that, according to the Court, supported on collateral estoppel grounds application of the § 523(a)(6) exception.

## SECOND FACTOR: IRREPARABLE HARM

The irreparable harm factor, Mr. Damigo respectfully submits, must be assessed based on the applicant's particular circumstances. Mr. Damigo's particular circumstances in this case, as attested by his affidavit attached to this motion, include that he served in the U.S. Marine Corps; that he suffered physical and psychological injuries during two deployments in Iraq; that the severity of his injuries has been recognized and validated by the government, which has awarded him 100% disability status; that an enhanced susceptibility to anxiety, which includes a history of suicidal

DEBTOR'S MOTION FOR A STAY OF JUDGMENT

behavior and anxiety-induced psychosis, is among the symptoms he continues to cope with from his injuries in Iraq; that his present net worth is approximately the same as the amount he listed in his 2019 bankruptcy petition, i.e., $29,292; that he is now living in Georgia and would need to deplete his limited assets to engage a lawyer in Georgia if the plaintiffs' collection efforts proceed during the appeal; that given his military injuries and limited resources even a successful result in his appeal would not abate or redress the acute psychological distress he would suffer during the pendency of his appeal if plaintiffs' collection efforts are allowed to proceed.

Of course it is true that dealing with judgment collectors is to some degree unpleasant and can impose costs for nearly everyone. Mr. Damigo's susceptibility to psychological harm from such actions, however, is extraordinary and, moreover, results from injuries he incurred in service to his country. There should be no rigid rule that such injuries can never constitute irreparable harm. *See, e.g., Raffington v. Cangemi,* 2004 WL 2414796 (D. Mn Oct. 22, 2004) at * 1 (recognizing impairment of mental health as irreparable harm); *Parents' League for Effective Autism Services,* 339 Fed. Appx. 542 (unpublished) (6th Cir. 2009) at * 9 (same).

### THIRD FACTOR: INJURY TO OTHER PARTIES

The allegations in plaintiffs' amended complaint in this adversary proceeding do not support a reasonable inference that plaintiffs are presently subject to exigent bill-collecting threats with respect to economic losses, such as out-of-pocket expenses for medical bills or debts arising from lost income; nor that the paltry amounts, if any,

DEBTOR'S MOTION FOR A STAY OF JUDGMENT

they could extract from Mr. Damigo given his limited resources would appreciably abate any such expenses or debts, if there were any. To the contrary, numerous news reports, including from sources friendly to the plaintiffs, indicate crowdfunding efforts on the plaintiffs' behalf were very successful, and undoubtedly brought in funds in excess of plaintiffs' medical bills and economic losses. *See, e.g.*, https://web.archive.org/web/20170829023008/http://www.newsplex.com/content/news/Funds-pour-in-for-August-12-victims-442048583.html (CBS News Article entitled *Funds Pour In for August 12 Victims*; article states that "In the weeks since the deadly Unite the Right rally, more than a million dollars has been donated to help victims of that day's violence"; https://www.integrityfirstforamerica.org/exhibits?q=1034 (on line article by Integrity First for America, a supporter of plaintiffs in the *Sines v. Kessler* case, celebrating the plaintiffs' victory and "the amazing generosity of thousands of IFA supporters").

## FOURTH FACTOR: PUBLIC INTEREST

Given the small amount, if any, the plaintiffs' could recover from Mr. Damigo, their collection efforts could be fairly characterized as punitive in nature – as lawfare, motivated by ideological animus. Roberta Kaplan, the legal mastermind for the plaintiffs in the *Sines v. Kessler* litigation, essentially acknowledged this when she publicly vowed that *"We absolutely can and will bankrupt these groups. And then we will chase these people around for the rest of their lives. So if they try to buy a new*

DEBTOR'S MOTION FOR A STAY OF JUDGMENT

*home, we will put a lien on the home. If they get a new job, we will garnish their wages."*[1] The public interest is surely not well served by such lawfare. Mr. Damigo, by contrast, seeks the fresh start that the pro-debtor and rehabilitative policies of the Bankruptcy Code provide for worthy debtors, which he believes himself to be.

## CONCLUSION

For the reasons stated, Mr. Damigo respectfully requests a stay of this Court's August 29, 2025 judgment pending final resolution of his appeal.

Respectfully submitted,

_____/s/_____

Glen K. Allen, Esq.
5423 Springlake Way
Baltimore, MD 21212
Attorney for Nathan Damigo, Debtor

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2025 true and accurate copies of the foregoing were served via ECF procedures of this Court to all counsel of record.

_____/s/_____

Glen K. Allen, Esq.
5423 Springlake Way
Baltimore, MD 21212
Attorney for Nathan Damigo, Debtor

---

[1] Allen Wexler, "Roberta Kaplan Takes White Supremacy to Court," *Moment Magazine*, January 6, 2020, https://momentmag.com/roberta-kaplan-takes-white-supremacy-to-court/.

DEBTOR'S MOTION FOR A STAY OF JUDGMENT

1 Glen K. Allen, admitted pro hac vice
  5423 Springlake Way
2 Baltimore, MD 21212
  Tel: 410-323-8665
3 glenallenlaw@protonmail.com

4 Attorney for Debtor and Defendant
  Nathan Damigo

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>**NATHAN BENJAMIN DAMIGO,**<br>**Debtor**<br>Chapter Number: 7 | Case No. 19-90003-E-7<br>Hon. Judge Klein<br>**DEBTOR NATHAN DAMIGO'S AFFIDAVIT IN SUPPORT OF HIS MOTION TO STAY ENFORCEMENT OF JUDGMENT** |
| **ELIZABETH SINES, SETH WISPELWEY, MARISSA BLAIR, TYLER MAGILL, APRIL MUNIZ, HANNAH PEARCE, MARCUS MARTIN, NATALIE ROMERO, JOHN DOE, AND CHELSEA ALVARADO**<br>**Plaintiffs**<br>v.<br>**NATHAN BENJAMIN DAMIGO**<br>**Defendant** | Adv. Pro. No. 19-09006-E<br>Hearing Date:<br>Hearing Time:<br>Action Filed:<br>Trial Date: |

DEBTOR NATHAN DAMIGO'S AFFIDAVIT IN SUPPORT OF HIS MOTION TO STAY ENFORCEMENT OF JUDGMENT

I, Nathan Damigo, under oath, subject to the penalties of perjury, and upon personal knowledge attest to the following:

1. I am the debtor in the above-captioned adversary proceeding.
2. I was in the United States Marine Corp from June 22, 2004 to June 21, 2008.
3. My tours of duty while in the Marines included 16 months total over two deployments doing front line infantry duty in Iraq.
4. I suffered serious physical and psychological injuries while serving in Iraq.
5. The government has recognized and validated the serious nature of my injuries. I am on 100% disability as a result of them.
6. An enhanced susceptibility to anxiety, which includes a history of suicidal behavior and anxiety-induced psychosis, is among the symptoms I continue to cope with from my injuries in Iraq.
7. My net worth amount of $29,292 that I set forth in my 2019 bankruptcy petition (amended schedule filed February 2, 2019) remains approximately accurate today.
8. I am presently living in Georgia. I expect but do not know whether my military disability income and other aspects of my limited resources would be exempt under Georgia or federal law from enforcement of the judgment rendered by the bankruptcy court. If enforcement of the judgment proceeds, it will be necessary for me to engage a Georgia lawyer to protect my rights in this regard. Doing so would deplete what few assets I have to live on and to prosecute my appeal in this case.
9. I believe my appeal is strongly meritorious. Subjecting me to enforcement actions during the many months and possibly years that the appeal is pending would cause me acute anxiety, especially in light of my enhanced susceptibility to anxiety as a result of my military injuries and my limited resources. In the event my appeal is successful, as

DEBTOR NATHAN DAMIGO'S AFFIDAVIT IN SUPPORT OF HIS MOTION TO STAY ENFORCEMENT

I hope and believe it will be, the acute psychological distress I would experience as a result of plaintiffs' collection actions and tactics could not be retroactively removed or abated; it would be beyond redress and repair.

I solemnly affirm under penalties of perjury and on personal knowledge that the contents of this document are true.

*/s/ Nathan Damigo*

Nathan Damigo

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2025 a true and accurate copy of the foregoing was served via ECF procedures of this Court to all counsel of record.

/s/

Glen K. Allen, Esq.
5423 Springlake Way
Baltimore, MD 21212
Attorney for Nathan Damigo, Debtor

DEBTOR NATHAN DAMIGO'S AFFIDAVIT IN SUPPORT OF HIS MOTION TO STAY ENFORCEMENT